Katherine N. R. **DENCKLA**

v.

Robert **MAES**, Frederick H. **Donner**, Edgar **Scott**, Viola **MacInnis**, and Independence **Foundation**.

Civ. A. No. 68–683.

United States District Court,
E. D. Pennsylvania.

May 21, 1970.

---

Blank, Rudenko, Klaus & Rome, Philadelphia, Pa., for plaintiff.

Duane, Morris & Heckscher, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

TROUTMAN, District Judge.

### I.

#### Introduction

This is in form a member's derivative action against certain officers, directors and/or members of a non-stock, non-profit charitable corporation for mismanagement. There is now before the Court for disposition the defendants' motions to dismiss the complaint under F.R.Civ.P. 12(b) and for summary judgment under F.R.Civ.P. 56 on the grounds of res judicata, statute of limitations, standing to maintain the action and failure to first satisfy certain procedural requirements for the maintenance of a derivative action.[1] In the event the Court denies defendants' motions, the defendants request that the plaintiff be directed to post a bond as security for costs pursuant to Local Rule 38.

The plaintiff is an adoptive daughter of William H. Donner, deceased, and a member of Independence Foundation, a named defendant. William H. Donner was the founder of the Donner Foundation, the name of which was changed to Indpendence Foundation by amendment to its certificate of incorporation. Independence is a non-stock membership, charitable corporation organized under the laws of the State of Delaware. The individual defendants direct or manage the activities of Independence and it is their conduct in that connection which is sought to be put at issue in this action.

The first contention made by the defendants is that this action is barred by the doctrine of res judicata. In support of this contention they refer us to a suit which was instituted in Delaware and which involved this same plaintiff and this same Foundation. The complete record of those proceedings has been filed and made a part of this record. The background and history of the difficulties encountered in the administration and management of this Foundation are accurately set forth in the opinion of the Delaware Supreme Court at pages 180–182 of the Delaware Record as follows[2]:

In his lifetime William H. Donner dominated and controlled the activities of Independence. Following his death disputes and disagreements arose

---

1. Other grounds were raised in the original motion but it does not appear that the defendants are pressing them. In addition, the defendant Donner originally contended that venue and service was not proper as to him personally. However, he has since withdrawn these contentions.

2. The citation of the opinion referred to is Denckla v. Independence Foundation, 41 Del.Ch. 247, 193 A.2d 538 (1963). However, since the complete record of the Delaware proceedings has been made a part of this record all references to those proceedings will be to the Delaware Record.

among the members of Independence. The members, generally speaking, divided into two contending factions. One faction was made up of lineal descendants of William H. Donner, while the other consisted largely of the adoptive daughters, plaintiffs herein, and certain non-family members and officers. The division of opinion between the factions arose from a difference of view concerning the grant policies of Independence. By 1960 the disagreement had reached a point where all the members agreed, in principle at least, that it was desirable to divide the Foundation into two, with the disputing factions each in control of one of the resulting foundations.

To effect this division the William H. Donner Foundation, Inc., a charitable corporation of the District of Columbia, was formed and the name of Donner Foundation (Incorporated) changed to Independence Foundation. The directors of Independence thereupon granted approximately 55% of the assets of Independence to the William H. Donner Foundation. The dollar amount of this grant was approximately $25,000,000.

Prior to the actual grant to the William H. Donner Foundation the directors of Independence had received approval in principle of the plan to divide Independence from all of the members of Independence including the appellant and her sister, her co-plaintiff, and 77% of the members had expressed their approval of the grant in writing.

During the interval following the death of William H. Donner and while the controversy between the factions of members was going on, the Board of Directors and the members of Independence had acted to accomplish several things. By amendment to the By-Laws the adoptive daughters of William H. Donner, plaintiffs herein, and their lineal descendants upon coming of age became members of Independence; several non-family members were elected, and the By-Laws were amended to provide that the officers of the Foundation should *ex officio* be members. It is charged by appellant [plaintiff herein] that as a result of these steps and as a result of the division, the non-family members are left in control of Independence contrary to the desire of William H. Donner, the founder. It appears, however, that throughout this unfortunate family squabble the appellant sided with the so-called non-family faction against the family faction.

Upon the formation of the William H. Donner Foundation and its endowment, the Donner family members resigned as members of Independence and became members of and in control of the William H. Donner Foundation. The appellant and her sister were thereupon left as members of Independence in an alleged minority position with no effective voice in the control of Independence.

In the opinion of the directors of Independence the Board had authority under its Certificate of Incorporation and by-laws to make the grant to the William H. Donner Foundation without membership approval but, nevertheless, notice of a special meeting was sent to all members for the purpose of having the formal approval of the members recorded in the minutes of Independence.

It was to enjoin the convening of the special meeting of members that plaintiff herein and her sister, Dorothy Stewart, filed the suit in Delaware. The thrust of the original complaint in that action was to question the legality of the proposed transfer of assets from the Independence Foundation to the newly-formed William H. Donner Foundation. In support of that action present plaintiff and her sister submitted affidavits in which they set forth the background and history of the dispute which ostensibly prompted the proposed transfer, questioned the propriety of the action of the Board of Directors in amending the by-laws to grant executive officers *ex officio* membership, and intimated that

the real reason for the proposed transfer was an attempt by the Board of Directors, defendants in that action, to wrest control of the Foundation from the family descendants of its founder as evidence by the alleged secretive manner in which they consummated the transfer. At this juncture, present plaintiff's sister, co-plaintiff in the Delaware action, does not appear to have actively participated any further in those proceedings. The present plaintiff then amended the complaint by the addition of a paragraph numbered 10, hereinafter referred to as the "first amendment", to allege that the transfer of fifty-five per cent of the Foundation's assets was made as a compromise settlement to silence threats of litigation by the blood descendants of its founder. It was also alleged that the threats of litigation referred to included, but were not limited to, a threat to challenge the action of the Board of Directors in amending the by-laws to grant executive officers *ex officio* membership. The present plaintiff then sought to further amend the complaint, hereinafter referred to as the "proposed amendment", to allege a conspiracy among the defendants in that action to secure control of the Foundation and to exploit the Foundation for their own personal benefit.

Procedurally, in the Delaware proceedings, after the original complaint was filed the defendants moved to dismiss it for failure to state a cause of action. Prior to any decision on this motion, plaintiff made the "first amendment" to her original complaint by adding paragraph 10. The Chancery Court granted the defendants' motion on the original complaint, treating it as a motion for summary judgment because of the affidavits filed in support of it, but deferred action on the first amendment as set forth in paragraph 10. The plaintiff then moved for leave to file the so-called proposed amended complaint. This motion was denied by the Chancery Court on the ground that it set forth causes of action and prayers for relief not included in the original complaint or the first

amendment thereto, and which were based upon facts known to the plaintiff at the time the first amendment was filed. Del.Rec. pp. 173 & 174. The Chancery Court then dismissed the first amendment, paragraph 10, which is what was left of the action. In affirming the decision of the Chancery Court, the Delaware Supreme Court considered paragraph 10 as though it were incorporated into the proposed amendment and not independent of it. The Court viewed the proposed amendment as realleging "in more detail the original complaint" with the addition of "charges" of conspiracy, Del.Rec. p. 191, and concurred in the reasons stated by the Chancery Court for denying leave to amend.

In the instant case, the complaint alleges a course of conduct or conspiracy on the part of the individual defendants designed to wrest control of Independence from the family descendants of its founder, William H. Donner, for the purpose of exploiting the Foundation for their own personal benefit. To effectuate their plan the complaint alleges that commencing in 1957 the individual defendants improperly placed Foundation grants, amended the by-laws so as to increase the number of directors, and granted *ex officio* membership in the Foundation to all of its executive officers, all to the end of wresting control of the Foundation from the family descendants of its founder for their own personal benefit. The complaint further alleges that the individual defendants achieved their objective and that this course of conduct culminated in 1961 when, in order to silence threats of litigation by the blood descendants of William H. Donner, the individual defendants granted approximately fifty-five per cent of the assets of the Independence Foundation to the newly-formed William H. Donner Foundation which was to be controlled by the blood descendants of William H. Donner. The plaintiff contends that this course of conduct left the defendants in control and left her and other adoptive descend-

ants of William H. Donner in a hopeless minority position in the Independence Foundation contrary to the intentions of its founder. The complaint then goes on to further allege that, in addition to obtaining control of the Foundation in an improper manner, the individual defendants have exploited, and continue to exploit, the Foundation for their own personal benefit.

The principal question before this Court is whether in applying the doctrine of res judicata the Delaware proceedings are a bar to the maintenance of the present action. The jurisdictional basis for this action is diversity of citizenship and there appears to be no dispute between the parties that Pennsylvania law controls the disposition of the defendants' contention concerning the doctrine of res judicata. Hartmann v. Time, Inc., 166 F.2d 127 (3rd Cir. 1948); Blum v. William Goldman Theatres, Inc., 174 F.2d 914 (3rd Cir. 1948); Commonwealth v. Brown, 260 F.Supp. 323 (E.D.Pa.1966).

## II.

### Res Judicata

■ The doctrine of res judicata rests on public policy to put an end to litigation and to eliminate the resulting hardship to individuals should they be vexed twice for the same cause. The doctrine itself was broadly stated in the case of Wallace's Estate, 316 Pa. 148 at page 153, 174 A. 397 at page 399 (1934) as follows:

"* * * the rule of res judicata is that when a court of competent jurisdiction has determined a litigated cause on its merits, the judgment entered, until reversed, is, forever and under all circumstances, final and conclusive as between the parties to the suit and their privies, in respect to every fact which might properly be considered in reaching a judicial determination of the controversy, and in respect to all points of law there adjudged, as those points relate directly to the cause of action in litigation and

affect the fund or other subject-matter then before the court. * * *"

■ Plaintiff argues that before the doctrine may be invoked there must be a disposition of issues on their merits in the prior proceeding. The plaintiff apparently concedes that the mere fact that the Delaware proceedings were disposed of on preliminary motion does not preclude the application of the doctrine if there has been a disposition on the merits. Fiumara v. Texaco, Inc., 428 Pa. 302, 236 A.2d 516 (1968); Wallace's Estate, *supra*. Certainly the allegations in the original complaint and the affidavits in support of it which were filed in the Delaware action were disposed of on their merits since the Court granted the defendants' motion to dismiss the complaint for failure to state claim, treating it as a motion for summary judgment. It would also appear that the allegations in the first amendment to the complaint were disposed of on their merits since the Chancery Court, although initially deferring action, granted the defendants' motion to dismiss it for failure to state a claim. It would appear, however, that all the allegations in the proposed amended complaint may not have been disposed of on their merits as such since the Delaware Supreme Court, in affirming the Chancery Court's refusal to allow the proposed amendment, stated, among other things, that "new causes of action not within the scope of the original complaint are asserted". Delaware Record p. 192.

■ The elements essential to the invoking of the doctrine of res judicata have been variously stated. In Pennsylvania it is essential that there be an identity of parties and of subject-matter in the two actions. Hochman v. Mortgage Finance Corp., 289 Pa. 260, 137 A. 252 (1927). The absence of either of these elements is fatal to the application of the doctrine.

■ In order to satisfy the requirement that there be identity of parties, it is not necessary that the same individuals be involved. It is sufficient if

the parties involved in the two actions are in privity with respect to the matters at issue. Commonwealth ex rel. McClintock v. Kelly, 287 Pa. 139, 134 A. 514 (1926). Consequently, while it is true that the only defendants in this action who were also named in the Delaware action are the defendants Maes and the Foundation itself, there is identity of parties since the additional defendants in this action and the defendants named in the Delaware action are in privity with respect to the alleged improprieties suggested by the plaintiff in this action. Parenthetically, we note that the plaintiff does not appear to seriously contend otherwise.

■ In attempting to ascertain whether there is an identity of subject-matter it will be necessary to compare and contrast what was involved in the Delaware proceedings with what is involved in the action now before this Court. A comparison of the contentions made in the original complaint and the first amendment in the Delaware action, both of which were disposed of on their merits, with those made in this action indicate that the paramount issue in both is control of this Foundation. What underlies both actions is an attack on a course of conduct by the officers and directors of this Foundation whereby they obtained control. In the original complaint in the Delaware action the present plaintiff attacked the transfer of assets, whereas in this case the transfer of assets becomes the culmination of a conspiracy. In the first amendment to the complaint in the Delaware action the present plaintiff alleged that the transfer of assets was prompted by threats of litigation. The same contention is made in this action, but now it becomes part and parcel of a conspiracy. It was also alleged in the first amendment that the threats of litigation referred to included a challenge to the right of the Board of Directors to amend the by-laws to grant officers *ex officio* membership. The same contention is made in this case, but again it becomes part and parcel of a conspiracy. It is, therefore, the very

same course of conduct which underlies the conspiracy charged in this action which was at issue before the Delaware Courts. It is for this reason that the requirement that there be identity of subject-matter is satisfied and we cannot permit the plaintiff to draw us to a different conclusion by the simple expedient of superimposing allegations of conspiracy upon this very same course of conduct.

■ The plaintiff also contends, however, that identity of subject-matter is not alone a sufficient test. She contends that the true requirement is that the causes of action in the two suits must be the same. Undoubtedly, the subject-matter involved in the two actions must be the same, for otherwise there could not be an identity of the causes of action; but, the plaintiff contends, the same transactions or state of facts may give rise to distinct or successive causes of action, and a judgment on one will not bar a suit on another. Therefore, the plaintiff contends, the judgment in the Delaware proceedings, although between the same parties and even assuming it relates to the same subject-matter, is not a bar to this action, since the cause of action alleged in this action was not disposed of on its merits in the Delaware proceedings.

To support her contention in this regard the plaintiff has seized upon the refusal of the Delaware Courts to permit the proposed amendment to the complaint. Plaintiff apparently concedes that the proposed amendment contained charges of conspiracy which are similar, if not identical, to the charges of conspiracy made in this action. But since the Delaware Courts refuse to permit the proposed amendment to add a cause of action involving conspiracy charges not contained in the original complaint, or the first amendment to it, she contends that the Delaware proceedings do not preclude her from litigating the same cause of action in this Court.

If we define cause of action in terms of the legal theory upon which the plaintiff is proceeding in this action, then it

may well be that the plaintiff's present cause of action is not identical with the cause of action adjudicated on its merits in the Delaware proceedings. On the other hand, if we define it in terms of the specified conduct of the defendants upon which the plaintiff relies to enforce her claim then the plaintiff's present cause of action is identical with the cause of action previously adjudicated. However, "* * * [t]he inquiry is * * * not always as to the identity of the immediate cause of action * * *", Commonwealth ex rel. McClintoch v. Kelly, supra, at page 144, 134 A. at 516, but:

"* * * whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties actually had an opportunity to appear and assert their rights. * * *" Hochman v. Mortgage Finance Corporation et al., supra, 289 Pa. at 263, 137 A. p. 253. See also Wallace's Estate, supra, 316 Pa. at 153, 174 A. 397; Helmig v. Rockwell Manufacturing Company, 389 Pa. 21, 31, 131 A.2d 622 (1957).

Thus, for purposes of res judicata, emphasis is placed not necessarily on determining the identity of the causes of action, but on a comparison of the ultimate and controlling issues which are before the Court in this proceeding with those which were disposed of on their merits in the prior proceeding.

■ The gist of both the Delaware action and this action is control of this Foundation. In both actions the plaintiff contends that the defendants improperly obtained control primarily by granting executive officers *ex officio* membership and by transferring a portion of the assets of the Foundation to appease the blood descendants of its founder. The Delaware Courts considered these contentions on their merits and held that the control thereby acquired by the defendants was proper.

These same contentions are again before this Court and constitute the principal "ultimate and controlling issues" in this action. Merely by intertwining allegations of conspiracy with these very same contentions does not make these issues any the less ultimate and controlling. Helmig v. Rockwell Mfg. Co., *supra*. We hold, therefore, that the elements for the application of the doctrine of res judicata have been satisfied and that the decision of the Delaware Courts, holding in effect that control of this Foundation was properly acquired by the present defendants or their privies, is a bar to the plaintiff's contention that the present defendants or their privies conspired to improperly obtain control.

■ The matters concluded by the application of the doctrine of res judicata include "* * * not only the issues actually adjudicated in the first proceeding, but also those which might have been raised and passed upon * * *". Hochman v. Mortgage Finance Corporation et al., *supra*, 289 Pa. at page 264, 137 A. at page 253[3]. This is not to suggest that each and every issue which might have been raised and passed upon in the prior proceeding is concluded, but only those issues which in some way relate to what was actually adjudicated in the prior proceeding and which were not raised are concluded. The primary issue in both actions is control. For the most part, the conduct which caused control to be placed in the hands of these defendants was expressly passed upon by the Delaware Courts and, as previously stated, the Delaware proceedings are res judicata as to it. To the extent anything additional is alleged in this action in support of the contention that these defendants improperly conspired to obtain control of the Foundation, these are matters which might have been raised and passed upon in the Delaware proceedings and, therefore, are also barred by the application of the doctrine of res

---

**3.** See also Williamson v. Columbia Gas & Electric Corp., 186 F.2d 464 (3rd Cir. 1950); Wallace's Estate, *supra*.

judicata. This includes additional grounds or theories for recovery, such as the plaintiff's contention that the course of conduct to obtain control which was at issue in the Delaware proceedings now constitutes a conspiracy to obtain control, and additional remedies or prayers for relief not included in the prior proceeding whichever were alleged for the first time in this proceeding.[4] It also encompasses allegations of fact known at the time the prior proceedings were instituted, but not included in support thereof. *Wallace's Estate, supra.* On this latter point, we consider especially relevant the finding of the Delaware Chancery Court, at page 174 of the Delaware Record, in which the Supreme Court concurred at page 192, that the present plaintiff knew most of the facts which she alleged in support of her conspiracy charges at least when she first amended the complaint and yet failed to include them. In summary, therefore, we hold that the plaintiff's contention that these defendants or their privies improperly conspired to wrest control of this Foundation from the family descendants of its founder is barred by the doctrine of res judicata.

■ We do not mean to suggest that the plaintiff has not injected into this action a few factors in support of her allegations of conspiracy to obtain control which were not alleged in the original complaint and first amendment in the Delaware proceedings. But we cannot permit this plaintiff to "split [her] cause of action and try part of it at one time and part at another"; she is not "at liberty to prosecute [her] rights piecemeal by presenting part only of the available grounds and reserving other parts for another suit if the first fails. * * *" *Wallace's Estate, supra,* 316 Pa. p. 154, 174 A. p. 400.

We recognize that because of the impact the application of this doctrine has on any case it should be applied sparing-

ly. But this is a case which well illustrates the need and purpose for properly applying the doctrine of res judicata. The administration and management of this Foundation has been the subject of controversy since the death of its founder in 1953. It has been placed in issue once before the Delaware Courts in a piecemeal fashion by repeated attempts to amend the original action and it is now at issue before this Court. That this has affected the Foundation is evident from the affidavits filed by the only members who are heirs of the founder other than the present plaintiff, who have refused to join with her in the present action, but have filed their affidavits in support of the defendants' motions. Therein they aver that such protracted litigation will adversely affect efforts to secure directors with recognized public and civic standing and will be detrimental to the public interests served by the Foundation.

### III.

### *Summary Judgment*

■ At page 16 of plaintiff's original brief, we find the following:

"The crux of the instant case is the deliberate scheme by Maes and the other officers of the Foundation to *wrest* control of the Foundation from the descendants of William Donner and *thereafter* to exploit the assets of the Foundation for their own benefit through excessive compensation, unnecessary brokerage commissions and improper grants of the Foundation's funds." (Emphasis added)

It is evident that the alleged "scheme * * * to wrest control of the Foundation from the descendants of William Donner" was clearly before the Delaware Court whose decision is res judicata. We have thus disposed of what appears to be the principal thrust of this suit. However, alleged subsequent exploitation of that control may, at least in part, fall

---

4. See Hochman v. Mortgage Finance Corporation et al., *supra;* Helmig v. Rockwell Manufacturing Company, *supra.*

outside the application of the rule of res judicata. To that extent we are, therefore, concerned with plaintiff's general allegations of "benefit [to] the defendants * * * through investments and brokerage" (paragraph 14(a) of complaint); of a "plan" (paragraph 15 of complaint); of "improper investments" (paragraph 19 of complaint) and utilization of assets for "personal benefit and profit through excessive salaries, expenses and other emoluments" (paragraph 20 of complaint). The defendants have filed a detailed affidavit containing factual denials of the broad and conclusionary allegations contained in the complaint.[5] Plaintiff, with an abundance of opportunity to do so, has filed no affidavit to the contrary except that filed in support of the complaint and has made no effort to meet the factual denials recorded and filed by the defendants.[6] Rather she asks that we engage in speculation and that we draw "an unfavorable inference as to defendants' motives of acquiring control."[7] Having drawn such "inference" plaintiff then suggests the existence of "many unresolved issues of fact", making this case "peculiarly unsuitable for summary disposition."[8] But "unresolved issues of fact" may not be created or manufactured by drawing inferences from general conclusions which are not factually supported. To do so would render all cases unsuitable for summary judgment, and for all practical purposes, nullify the effect of Rule 56.

■■■■ On the contrary, F.R.C.P. 56(e), as amended, provides:

"* * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party *may not rest upon the mere alle-gations or denials of his pleading,* but his response, by affidavits or as otherwise provided in this rule, must *set forth specific facts* showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." (Emphasis added)

The purpose of amending Rule 56 in 1963 was "to overcome a line of cases, chiefly in this Circuit, which allowed a party to oppose summary judgment successfully by resting on averments of his pleading * * *". United States v. Webber, 396 F.2d 381, 384 (3rd Cir. 1968). Accordingly, the rule, as amended, has been strictly adhered to in this Circuit. That the opposing party may not file a responsive affidavit because the facts are "not known" to him does not preclude the application of the rule and the entry of summary judgment. Chartier v. Empire Mut. Ins. Co., 34 F.R.D. 217, 218 (E.D.Pa.1964). A party is permitted to "pierce the allegations of facts in the pleadings and to obtain relief by summary judgment when facts set forth in detail in affidavits * * * show that there are no genuine issues of material fact to be tried". 6 Moore's Federal Practice, § 56.04[1], at 2058 (2d Ed.1966). The rule is applied even in protracted and complicated cases. Collidotronics, Inc. v. Stuyvesant Ins. Co., 290 F.Supp. 978 (E.D.Pa.1968), aff'd. per curiam 412 F.2d 1186 (3rd Cir. 1969).[9] In a complicated antitrust action, the Supreme Court has stated as follows:

"What Rule 56(e) does make clear is that *a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him.*

---

5. See affidavit of Robert A. Maes.

6. Affidavits filed by plaintiff's counsel were directed only to the question of laches which this decision does not reach. Therein, one reference only is made to the factual allegations of the complaint suggesting that "if true"

plaintiff is entitled to relief (see paragraph 16 of Rome affidavit).

7. See page 25 of plaintiff's original brief.

8. Id.

9. The instant case has been declared a "protracted case" and specially assigned.

* * * * * *

"While we recognize the importance of preserving litigants' rights to a trial on their claims, we are not prepared to extend those rights to the point of requiring that anyone who files [a] * * * complaint setting forth a valid cause of action be entitled to a full-dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint." (Emphasis added) First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 290, 88 S.Ct. 1575, 1592–1593, 20 L. Ed.2d 569 (1968).

The plaintiff cannot fairly be permitted to proceed on the basis of unsupported inferences where, as here, her right to proceed is properly challenged by the defendants pursuant to the express provisions of Rule 56. Therefore, summary judgment is proper and will be granted as to charges of subsequent exploitation not falling within the scope of the doctrine of res judicata as hereinbefore applied to this case.

Our conclusions thus dispose of the entire case and make it unnecessary to reach additional defenses asserted, including the statute of limitations, laches, failure to satisfy procedural requirements and lack of standing to maintain this action.[10]

## IV.

### *Conclusion*

We conclude: (1) that the doctrine of res judicata is properly applicable to this case to the extent indicated; (2) that defendant is entitled to summary judgment; and (3) that plaintiff's complaint should be dismissed.

---

10. In thus disposing of the case on its merits we have assumed, without deciding, that the plaintiff has standing to maintain this action. We recognize that although neither the statutory nor case law of the State of Delaware expressly confers such right upon a member of a non-stock charitable corporation having no proprietary interest in the assets of said corporation, the plaintiff was in fact before the Courts of Delaware in the prior proceeding.