S-W COMPANY, A MONTANA CORPORATION, ON BEHALF OF ITSELF AND ALL OTHER STOCKHOLDERS OF JOHN WIGHT, INC., A NEVADA CORPORATION SIMILARLY SITUATED, PLAINTIFF AND APPELLANT, *v.* JOHN WIGHT, INC., A NEVADA CORPORATION, JOHN WIGHT, THEORA WIGHT, AND E. A. WIGHT, DEFENDANTS AND RESPONDENTS.

No. 14033.
Submitted Oct. 11, 1978.
Decided Nov. 15, 1978.
Rehearing Denied Dec. 11, 1978.
587 P.2d 348.

Cannon & Gillespie, Richard E. Gillespie (argued), Donald Garrity (argued), Helena, for plaintiff and appellant.

Fillner & Pitet, Patrick G. Pitet (argued), Billings, for defendants and respondents.

MR. JUSTICE DALY delivered the opinion of the Court.

This appeal comes to us from a final judgment of the District Court of the Thirteenth Judicial District, in and for the County of Yellowstone, which adopted findings of fact and conclusions of law made by a special master resulting in the dismissal of 21 of plaintiff's 22 causes of action on various grounds as specified below.

The history of the current litigation is extremely complex and involves eight prior law suits. For this reason we have set forth the facts leading to this appeal in chronological order.

This is a shareholder's derivative action against John Wight, Inc. and its directors. John Wight, Inc. was organized as a Nevada corporation in 1957 and was authorized to issue 2,500 shares of stock. As of June 24, 1957, all of the stock in the corporation had been issued to the following individuals:

| | |
|---|---:|
| John Wight | 10 shares |
| Theora Wight | 1,000 shares |
| Patricia Wight | 198 shares |
| S-W Company | 500 shares |
| John Wight, Jr. | 198 shares |
| Mildred Beadle | 198 shares |
| Marvel Lowrance | 198 shares |
| Aleen Baxter | 198 shares |

On May 15, 1970, Theora Wight agreed to transfer her 1,000 shares to the corporation in exchange for various payments and an agreement that she and her husband John could live, rent free, in a house owned by the corporation for as long as they chose.

Five days later, on May 20, 1970, 999 shares were issued to John Wight. Theora Wight retained one share of stock.

John Wight, Jr. never accepted the 198 shares of stock issued to him and took no part in the affairs of the corporation. On Decem-

ber 23, 1972, the John Wight, Jr. stock certificate was canceled, and these additional 198 shares were also issued to John Wight.

On January 22, 1973, Marvel Lowrance sued the corporation and its directors (District Court Cause No. 61413) to nullify the issuance of the 999 shares and 198 shares to John Wight.

On the same date, Suzanne McCormick, who owned 50 shares of stock, filed an action against the corporation (District Court Cause No. 61422) seeking an accounting and injunctive relief.

Marvel Lowrance filed another action on February 1, 1973, to collect from the corporation on a promissory note to her (District Court Cause No. 61496).

On February 14, 1973, a new stock certificate (No. 24) was issued to John Wight to replace the earlier certificate of 999 shares "in the event that any error was found by the court in respect of the issuance of said certificate; otherwise Certificate No. 24 was to include any unissued shares which would become available in the near future."

On November 26, 1973, the shareholders voted to dissolve the corporation. On the same day John Wight and E. A. Wight, as a majority of the board of directors (the third member being absent) agreed to transfer the residence to John and Theora Wight in exchange for $36,000 in promissory notes from the corporation to Theora Wight. The directors voted to give the shareholders 30 days' written notice of the transfer, but the transfer was effected without notice by warranty deed signed November 21, 1973, and recorded November 28, 1973. At the November 26, 1973 directors' meeting, John Wight also informed the directors that he and Theora had loaned the corporation $120,000 for the redemption of the corporation's oil refinery in Shelby, Montana, and in addition that there was $90,000 of other indebtedness of the refinery.

On May 11, 1974, the directors held a special meeting and declared that half of the original stock issue was intended to be issued to E. A. Wight. They canceled the original stock certificates and reissued them for half the number of shares they originally represented. At the same meeting the directors accepted a reconveyance

from E. A. Wight of all but one of his shares of stock in exchange for an assignment of 20 percent of the corporation's net income from a refinery and oil field.

S-W Company sued John Wight, Inc., for collection of a $3,993.72 debt on August 7, 1974 (District Court Cause No. 64961). On August 27, 1974, S-W Company and Marvel Lowrance sued for the appointment of a receiver for John Wight, Inc. and the dissolution of the corporation (District Court Cause No. 65072).

On December 13, 1974, S-W Company sued the corporation and John and Theora Wight to set aside the transfer of the residence (District Court Cause No. 65792).

In July, 1975, Marvel Lowrance amended her complaint in Cause No. 61413 to challenge the cancellation of half her shares and the issuance of the shares to E. A. Wight.

In November, 1975, two more suits involving the parties to this action were filed. District Court Cause No. 68240 was an action by the corporation against Marvel Lowrance and Northwest Crude concerning royalty payments. Marvel Lowrance counterclaimed in that action. District Court Cause No. 68269 was an action for unpaid wages filed by Marvel Lowrance against John Wight, Inc.

In June, 1976, the directors agreed to restore the original shareholders to their full stock ownership. As a result, Marvel Lowrance stipulated that that portion of her complaint in Cause No. 61413 could be dismissed with prejudice. This stipulation was filed on June 18, 1976. By amended judgment dated July 12, 1976, the balance of this action was dismissed as to Marvel Lowrance in an individual capacity. This was in response to defendants' motion for summary judgment on the ground that Lowrance could not bring action in her individual capacity.

Suzanne McCormick's action against the corporation (Cause No. 61422) was dismissed by stipulation on June 22, 1976.

Cause No. 65072, the action by S-W Company and Marvel Lowrance was dismissed with prejudice by stipulation of the parties on June 18, 1976.

Cause No. 65792, the action by S-W Company to set aside the transfer of the residence, was dismissed with prejudice against S-W Company in its individual capacity only by judgment dated July 12, 1976. Defendants had moved for summary judgment on the ground that S-W Company could not bring action as an individual shareholder.

The remaining actions were settled and dismissed by stipulation on June 22, 1976.

At the June 22, 1976, meeting of the board of directors of John Wight, Inc., John Wight informed the directors that the corporation owed him $458,200. On June 25, 1976, he submitted claims indicating the corporation had total obligations of $564,161.39 of which $478,190 was owed to John Wight.

On September 11, 1976, John Wight told the board that the corporation's total debt was $894,661.39 and claimed the corporation owed him $680,364.75. At about the same time, John Wight was negotiating a sale of the Shelby refinery for $900,000. The directors called a special meeting of the shareholders for October 20, 1976, to consider the transfer of the refinery to John Wight "in satisfaction of certain indebtedness and mortgages to him."

On October 15, 1976, the S-W Company, on behalf of itself and all other shareholders in John Wight, Inc., filed the action which is the subject of this appeal. As of this time, it appears that defendant corporation had issued 2,499 shares. Defendant directors controlled 1,207, or 48 percent and plaintiff represents shareholders controlling 1,098 shares (44 percent). Patricia Kane, a nondirector shareholder, owns 198 shares but is not aligned with plaintiff in this action.

The complaint contained 22 causes of action and sought: to invalidate the issuance of 999 shares and 198 shares in the corporation to John Wight; a return of the residence and other assets of the corporation; an accounting; the appointment of a receiver; and an order enjoining the special shareholders' meeting and transfer of the oil refinery. The injunction was not granted, and the matter was referred to a special master for hearing.

The special master concluded that, except for the cause of action challenging the transfer of the oil refinery, defendants were entitled to summary judgment on the grounds of *res judicata* and collateral estoppel. He also concluded that 18 of the causes of action were barred by various statutes of limitation; that the board of directors were not in full, complete and exclusive control of the corporation; and that the action could not be maintained as a shareholder's derivative action because plaintiff did not adequately represent the minority shareholders and because plaintiff represented the majority of the.shareholders in the defendant corporation. These findings and conclusions were adopted by the District Court, which entered its judgment dismissing Counts 1 through 21 of the complaint.

The following general issues and specific sub-issues are presented on this appeal:

1. Is this action maintainable as a shareholder's derivative action if one or more of the following is the case:

(a) Not all of the nondirector shareholders agree that the party bringing the suit "fairly and adequately represent" their interests as required by Rule 23.1, Mont.R.Civ.P.

(b) The board of directors of the corporation do not own outright a majority of the shares of the corporation.

(c) No demand was made on the board of directors by plaintiff to obtain the action it desires as required by Rule 23.1, Mont.R.Civ.P.

2. Was the District Court correct in holding that the instant suit was barred on the basis of *res judicata* if either or both of the following is the case:

(a) All prior actions against the present defendants on the same grounds resulting in dismissal were instituted by the plaintiffs therein as suits in an individual capacity and not as shareholder's derivative actions in a representative capacity.

(b) If any of the prior actions were in fact derivative, there was no notice of their dismissal or compromise to shareholders as required by Rule·23.1, Mont.R.Civ.P.

3. Was the District Court correct in ruling that 18 of the 22 causes of action are barred by various statutes of limitation.

## SHAREHOLDER'S DERIVATIVE ACTION

Although the District Court found that the instant suit was a shareholder's derivative action, it made several findings and conclusions to the effect that the action was not maintainable as a shareholder's derivative action by this plaintiff. These findings and conclusions are now being challenged on appeal.

Specifically, the District Court found "[t]hat S-W Company does not adequately and fully represent the interests of the minority shareholders" and therefore concluded "[t]hat the instant suit is not maintainable as a stockholders' derivative suit under Rule 23.1, M.R.Civ.P. because of Plaintiff's failure to adequately represent the interests of the minority shareholders . . ."

This finding and conclusion appears to be based on the affidavit of Patricia Kane, a nondirector shareholder, stating that plaintiff did not adequately represent her interests. As all other nondirector shareholders filed affidavits that S-W Company did represent their interests, the rationale for the District Court's conclusion must be that all nondirector shareholders must join in a shareholder's derivative action. This is incorrect.

It is not necessary that derivative action plaintiffs have the support of a majority of the shareholders or even that they be supported by all the minority shareholders. *Nolen v. Shaw-Walker Co.* (6th Cir. 1971), 449 F.2d 506, 508. It is only necessary that the plaintiff represents interests of shareholders other than itself. *Kuzmickey v. Dunmore Corp.* (E.D.Pa.1976), 420 F.Supp. 226, 231. The standard is whether the plaintiff represents other shareholders similarly situated — that is, those who are dissatisfied with the failure of the directors to enforce a right of the corporation which is properly assertable by them. *Shulman v. Ritzenberg* (D.C.Cir. 1969), 47 F.R.D. 202, 211; *Kuzmickey*, supra.

Therefore, to the extent that the District Court concluded that plaintiff failed to adequately and fully represent the interests

of the minority shareholders by failing to achieve unanimous backing of the nondirector shareholders, the District Court is reversed.

There was a second ground on which the District Court based its conclusion that the instant action was not maintainable as a derivative action:

". . . the instant suit is not maintainable as stockholders' derivative suit under Rule 23.1, M.R.Civ.P. because Plaintiffs represent the majority of the shareholders in the defendant corporation, JOHN WIGHT, INC."

To reach this conclusion the District Court subtracted the number of shares owned by the individual defendants (1,207) from the total number of outstanding and issued shares (2,499) thereby leaving a majority of shares (1,292) owned by nondirector shareholders. In so calculating the District Court aligned the 198 shares owned by Patricia Kane with the shares owned by those shareholders joining S-W Company in this suit despite the fact that Kane swore by affidavit that she was not aligned with S-W Company.

Under these methods of calculation plaintiff could not win: Kane is on defendants' side in determining that plaintiff does not adequately represent the interests of the minority shareholders but on plaintiff's side in determining that defendants do not control the corporation. In other words the same person that plaintiff cannot count on in its derivative action is the person plaintiff is expected to count on in seizing control of the corporation. Such an inequitable result cannot be allowed to stand.

The rationale that underlies the court's reliance on majority control of the corporation as essential to the maintenance of a derivative action is found in *Malcolm v. Stondall Land and Investment Co.* (1955), 129 Mont. 142, 146-47, 284 P.2d 258, 260:

"The underlying reason is, of course, that because the majority stockholders control the corporate machinery, they necessarily control the corporation and through its officers and directors the defense and the prosecution of any litigation involving the corporation. The sole or majority stockholders then have no need to resort to the indirection of a stockholders' suit by grace of a court of

equity to protect the corporate interests. Equity will deny them any such relief, if asked, because their remedy within the corporation is adequate."

This reasoning has no application to the facts of this case. Those shareholders joining S-W Company in its action own only 1,094 or 44 percent of the outstanding shares of John Wight, Inc. True, the defendant directors own only 1,207 or 48 percent of the outstanding shares. However, as long as Patricia Kane maintains her nonalignment with the plaintiff shareholders, they do not have the corporate majority necessary to control the corporation as was found in *Malcolm*. Rather, they fall into the category of minority shareholders which are allowed to sue on behalf of a corporation as held in *Sullivan v. Mountain* (1945), 117 Mont. 224, 227-28, 160 P.2d 477, 479. That defendant John Wight often voted the proxy of Patricia Kane at shareholders' meetings further supports the view that plaintiffs are in reality minority, not majority, shareholders and that defendant directors have *de facto*, if not formally registered, ownership and control of a majority of the outstanding shares.

Other courts have not required that the board of directors own a majority of the issued stock before a derivative action by nondirector shareholders can be maintained. In an early United States Supreme Court decision, *Delaware & Hudson Co. v. Albany & Susquehanna R. R.* (1909), 213 U.S. 435, 29 S.Ct. 540, 53 L.Ed. 862, of 35,000 outstanding shares the board of directors held 8,000 and the remaining shares were held by 500 plus other shareholders. The United States Supreme Court rejected:

"The proposition . . . that notwithstanding the power of 8,840 shares, held by the managers of both corporations, against 8,000 held by complainants and the protective committee, complainants were required by rule 94 [the predecessor to Rule 23.1] to engage and organize all other stockholders, or enough of them to direct or change the corporate management; in other words, struggle for the control of the corporation with an adverse board of directors." 213 U.S. at 452, 29 S.Ct. at 545, 53 L.Ed. at 868-69. [Bracketed material supplied.]

More recently, in *Meltzer v. Atlantic Research Corp.* (4th Cir. 1964), 330 F.2d 946, cert. den. 379 U.S. 841, 85 S.Ct. 78, 13 L.Ed.2d 47, the defendant directors owned only 40 percent of the voting stock, yet a shareholder's derivative action was allowed. Similarly, in *Gottesman v. General Motors Corp.* (2nd Cir. 1959), 268 F.2d 194, where the directors held a substantial but not controlling portion of the stock, the action was allowed.

■ In the case at hand the situation is more extreme. Defendant directors own in their own names 48 percent of the outstanding shares. One of these directors was consistently given the 8 percent proxy of a nondirector shareholder to vote at shareholders' meetings. *De facto*, then, the total shares controlled by the directors was 56 percent, a majority. Plaintiff is therefore powerless to act through the corporate channels to achieve the result it seeks by this suit.

For the same reason of *de facto* control of the majority of the outstanding shares by the defendant directors is the Rule 23.1 requirement of demand on the board of directors or majority shareholders by the plaintiff properly waivable.

Rule 23.1, Mont.R.Civ.P., requires:

"In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort."

The District Court found "[t]hat insufficient demand was made upon the directors herein to remedy the alleged wrongs complained of." This finding, however, overlooks the possible waiver of this requirement as stated in *Sullivan v. Mountain*, supra:

"The rule is well established in this jurisdiction that before a minority stockholder can be heard to prosecute a suit founded on a

right of action existing in the corporation itself, he must allege that a demand had been made upon the board of directors for relief from the grievance of which he complains, or that such demand has been met by a refusal. However, it is equally well established that in lieu of such demand and refusal, he may show such a state of facts as disclose that the demand, if made, would have been entirely unavailing. (Citations omitted.) This court has uniformly held that the above requirement is met, either where it reasonably appears that it would be useless to seek aid from the stockholders or where a course of conduct is being pursued by the corporation, such as would render an application for relief fruitless." 117 Mont. at 228, 160 P.2d at 479.

Thus, where a majority or substantial interest is held by the directors named as defendants in the action, no demand need be made because it obviously would be futile. *Weiss v. Sunasco, Inc.* (E.D.Pa.1970), 316 F.Supp. 1197, 1206. Courts have generally been lenient in declaring that the plaintiff was not required to make a demand in such circumstances. 3B Moore's Federal Practice ¶23.1.19 at 23.1-20, citing, *inter alia*, *de Haas v. Empire Petroleum Co.* (10th Cir. 1970), 435 F.2d 1223, 1228; *Liboff v. Wolfson* (5th Cir. 1971), 437 F.2d 121, 122 (majority of directors acquiesced in transactions complained of). See also *Walden v. Elrod* (W.D.Okla.1976), 72 F.R.D. 5, 13.

The requirement that the plaintiff set forth the reasons for not making the demand is not waived, however. The complaint in this case does set forth four reasons why no demand for relief was made on the board of directors: (1) a majority of the present board participated in, approved of, or benefited from the alleged wrongful acts; (2) the board, although aware of wrongful acts, failed to take action itself, instead conspiring to conceal these acts from the shareholders; (3) the individual defendants dominate and control the corporation; and (4) demand would have required the board to institute action against itself.

While these actions may be the subject of factual dispute, *de Haas v. Empire Petroleum Co.*, supra, 435 F.2d at 1228; *Milstein*

*v. Werner* (S.D.N.Y.1972), 54 F.R.D. 228, 230, in view of the record, we feel plaintiff has satisfactorily explained its noncompliance with the demand requirement of Rule 23.1. See generally 3B Moore's Federal Practice ¶23.1.19 and cases cited therein.

For the foregoing reasons, the conclusion by the District Court that this action is not maintainable as a shareholder's derivative action under Rule 23.1, Mont.R.Civ.P., is reversed.

RES JUDICATA

The District Court found that there were eight prior suits involving these parties, either between the corporations themselves, by various shareholders or officers of either against the other corporation, or between various shareholders of each corporation; that the parties in the present suit were the same or were in privity with the parties of these prior suits; that certain of these prior suits were derivative in nature; that all prior actions were fully settled on the merits of those civil actions; and that all issues raised in the instant suit, except for Count 22, could and should have been litigated in the previous actions.

On the basis of these findings, the District Court concluded:

"That the issues and causes of action raised in the present civil action, cause no. 70482, except for cause of action no. 22, are the same issues and causes of action that have been previously litigated by and between the same parties or parties in privity with them as previously litigated in cause nos. 61413, 61422, 61496, 64961, 65072, 65792, 68240 and 68269; therefore, the present civil action no. 70482, except for cause no. 22, is barred on the grounds of res judicata and collateral estoppel."

On appeal, plaintiff asserts and defendants concede that the District Court erred in including cause numbers 61496, 64961, 68240, and 68269 in the list of actions previously litigating the matters at issue in the present suit. There being no disagreement that these four actions are irrelevant to the determination of whether the current action is barred by *res judicata*, there will be no further discussion of these four prior actions.

■ The object of the principle of *res judicata* is to prevent reliti-

gation of that which has been finally adjudicated. 1B Moore's Federal Practice ¶0.405. This Court defined the criteria to be used in determining whether an action is barred by *res judicata* in *Smith v. Musselshell County* (1970), 155 Mont. 376, 378, 472 P.2d 878, 880:

". . . These criteria are: (1) the parties or their privies must be the same; (2) the subject-matter of the action must be the same; (3) the issues must be the same, and must relate to the same subject matter; and (4) the capacities of the persons must be the same in reference to the subject-matter and to the issues between them."

Proceeding to an application of these criteria to the facts of this case we agree with the District Court that *some* of the issues before the District Court in the instant action had been subject to litigation between the parties previously. These issues had been decided on their merits and a final judgment had previously been rendered between the parties, thus, presenting an absolute bar to plaintiff maintaining this action as to these issues.

In causes of action 1 through 12, S-W Company complains of the issuance of 999 and 198 shares of John Wight, Inc., to John Wight on the grounds of fraud, conspiracy, lack of adequate consideration, and lack of authority. In Cause No. 61413, Marvel Lowrance, president of S-W Company, also had challenged by amended complaint the issuance of these same shares on the same grounds. Cause No. 61413 then covered the entirety of the first 12 causes of action in the instant suit.

Because it is not necessary that the same individuals be involved but only that the parties involved in the two actions are in privity with respect to the matters at issue to satisfy the requirement of identity of the parties, *Denckla v. Maes* (E.D.Pa.1970), 313 F.Supp. 515, 520-21, the requirement of identity of parties, subject matter, and issues are fulfilled between 61413 and this suit. Only the requirement of identity of capacity is not met because 61413 was dismissed with prejudice as to the plaintiff only in an individual and not derivative capacity. It is well settled that dismissal of an action as to someone in their individual capacity does not act as *res*

*judicata* in a later action in a representative capacity. 1B Moore's Federal Practice ¶0.411[4] at 1447-48, citing, *inter alia, Dana v. Morgan* (2nd Cir. 1916), 232 F. 85, 89; *Liken v. Shaffer* (N.D.Iowa 1946), 64 F.Supp. 432, 454.

Likewise, Cause No. 65792, an action by S-W Company against John Wight, Inc. and John and Theora Wight to nullify the transfer of the residence from the corporation to the Wights, the subject of causes of action 13 through 15 of the current action, was ordered dismissed with prejudice as to the plaintiff in an individual capacity only.

Cause No. 61422, *McCormick v. John Wight, Inc.*, was an accounting action. Cause No. 65072, *S-W Company v. John Wight, Inc.*, called for liquidation and the appointment of a receiver for the corporation. These two prior actions cover causes of action 16 through 21 of the instant suit. Both of these actions were dismissed by stipulation of the parties. Unlike Cause Nos. 61413 and 65792, however, these two actions were determined to be derivative in nature.

Therefore, the four identities of parties, issues, subject matter, and capacity are met as to causes 16 through 21. Furthermore, although 61422 was dismissed itself without prejudice, the complaint in that action was incorporated by reference in 65072 which was then dismissed with prejudice. Therefore, 61422 and 65072 serve as *res judicata* as to causes of action 16 through 21 of this suit.

By the same process of incorporation is the identity of capacity left unresolved in 61413 fulfilled. The complaint in 61413 was attached as an exhibit to the complaint in 65072, the derivative action. The complaint in 61413 thereby became a part of the complaint in 65072 for all purposes. Rule 10(c), Mont.R.Civ.P. The subsequent dismissal with prejudice of 65072 as a derivative action therefore resulted in a concurrent adjudication of 61413 in a similar capacity. See *Denckla v. Maes, supra*, 313 F.Supp. at 520.

The rule applicable to the propriety of the application of *res judicata* to all matters, such as the matters included in 61413 and

61422, decided on the merits of a particular action, such as 65072, is:

". . . a final judgment on the merits by a court of competent jurisdiction 'constitutes an absolute bar to a subsequent action. *It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand,* but as to any other admissible matter which might have been offered for that purpose.' " 1B Moore's Federal Practice ¶0.410[1] at 1152-53, quoting *Cromwell v. County of Sac* (1877), 94 U.S. 351, 352, 24 L.Ed. 195, 197. (Emphasis added.)

Accord, *Mendez v. Bowie* (1st Cir. 1941), 118 F.2d 435, 440.

To summarize to this point, the complaints in 61413 and 61422 were incorporated into the complaint in 65072 which was dismissed with prejudice as a shareholder's derivative action. These three suits involved causes of action 1 through 12 and 16 through 21 of the present action. The four identities of parties or privies, issues, subject matter and capacity are all met with respect to these current causes of action and these three prior suits therefore barring relitigation of them now.

Plaintiff brings up a procedural point. Rule 23.1 requires that notice of the dismissal or compromise of a shareholder's derivative action be given to all shareholders in such manner as the court directs. Plaintiff contends no notice of the dismissal of Cause No. 65072 as a shareholder's derivative action was given, and therefore the dismissal cannot bar an identical action by a different shareholder in a subsequent derivative action, citing *Papilsky v. Berndt* (2nd Cir. 1972), 466 F.2d 251, *cert. den.* 409 U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665, for this proposition.

This contention is untenable even under its own authority. The Court of Appeals in *Papilsky* specifically held:

". . . when notice of a proposed dismissal of a stockholder's derivative suit for failure to answer interrogatories is not given to non-party stockholders, the judgment of dismissal does not bar an iden-

tical cause of action asserted by a *different stockholder* in a subsequent derivative suit." 466 F.2d at 256. (Emphasis added.)

Cause No. 65072 was entitled *S-W Company v. John Wight, Inc.* It was dismissed by stipulation of the parties. Plaintiff here, the S-W Company, obviously had notice of its dismissal. Neither is it in a position to complain of lack of notice nor does plaintiff qualify as a "different stockholder" under the holding of *Papilsky.*

Despite the conclusion that causes of action 1 through 12 and 16 through 21 were properly dismissed as *res judicata*, the record reveals no basis for so concluding as to counts 13 through 15. These causes of action contest the transfer of the residence from the corporation to the Wights. The prior action dealing with this transaction, Cause No. 65792, was dismissed with prejudice only as to the plaintiff therein in its individual capacity. Under the general rule, such a dismissal as to one party in an individual capacity does not bar a subsequent suit by the same party in a representative or derivative capacity. 1B Moore's Federal Practice ¶0.411[4] at 1447-48; *Liken v. Shaffer* (N.D.Iowa 1946), 64 F.Supp. 432, 454. The identity of capacity not being met, the prosecution of these three causes of action by S-W Company in a derivative capacity is not barred by the doctrine of *res judicata.*

The conclusion of the District Court that causes of action 1 through 12 and 16 through 21 are barred by *res judicata* is affirmed. The conclusion that causes of action 13 through 15 are barred by *res judicata* is reversed.

STATUTES OF LIMITATION

The District Court concluded that causes of action 3 through 14 and 18 through 21 are barred by the two-year statute of limitation contained in section 93-2607(4), R.C.M.1947; that causes of action 1 through 4 are barred by the five-year statute of limitation contained in section 93-2613, R.C.M.1947; and that causes of action 1 through 12 are barred by the three-year statute of limitation in section 93-2715, R.C.M.1947.

Since the District Court concluded, and we agree, that causes of action 1 through 12 and 16 through 21 are barred by *res judicata*,

we deem it unnecessary to consider whether those causes are likewise barred by the statutes of limitation cited. This leaves only the determination of whether causes of action 13 through 15 are barred by any applicable statute of limitation.

At the outset, we note that the District Court made no finding that cause of action 15 was barred by any statute of limitation. We agree.

 Cause of action 15 alleges that in November, 1973, John Wight, as president of John Wight, Inc., deeded residence property from the corporation to Theora Wight and to himself as individuals, without sufficient consideration flowing to the corporation. As this cause of action is based on an instrument in writing, the warranty deed, the eight-year statute of limitation in section 93-2603, R.C.M.1947, would appear to be the applicable time limit. Plaintiff's complaint, filed in October, 1976, is well within the statutory time limit.

 Defendants contend that at a shareholders' meeting on November 26, 1973, the corporation was given authority to sell its assets by unanimous vote of the shareholders and therefore plaintiff must be held to have acquiesced in the transfer of the residence from the corporation to the Wights. This contention lacks merit when applied to cause of action 15. The authority given by the shareholders to the directors to dispose of the corporate assets obviously was not intended to authorize the disposal of these assets for less than adequate consideration. This is especially so in the case of disposal to a member or members of the board of directors. At the very least, the adequacy of consideration and possibly the extent of authority given to the directors are factual questions. The investigation of these facts should not be precluded by summary judgment. Rule 56(c), Mont.R.Civ.P. As cause of action 15 is barred by neither *res judicata* nor by the running of any applicable statute of limitation, this cause must be remanded to the District Court for further proceedings.

This same result for different reasons is required of causes of action 13 and 14, which also challenge the transfer of the residence

from the corporation to the Wights. Cause of action 13 alleges that John Wight fradulently conspired with E. A. Wight as members of the board of directors to make this transfer knowing that insufficient consideration would flow to the corporation from Theora Wight. Cause of action 14 alleges that John Wight, as president of the corporation, fraudulently deeded the residence to Theora Wight, his wife, knowing that insufficient consideration would flow to the corporation.

The *shortest* possible statute of limitation, and the one the District Court concluded to be applicable to these claims, is section 93-2607(4), R.C.M.1947, which provides:

"Within two years:

". . .

"4. An action for relief on the ground of fraud or mistake, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."

This statute is tolled until discovery by the aggrieved party of the facts constituting the fraud. A review of the history of the transfer of the residence indicates that such knowledge may not be imputed to plaintiff until December, 1974, less than two years before the filing of the present action in October, 1976.

In the agreed statement of facts, the transfer of the residence came about as follows. On November 26, 1973, the shareholders voted to dissolve the corporation. On the same day, the board of directors, consisting of John Wight and E. A. Wight (Helen Lareva, the third member of the board was absent from this meeting) agreed to transfer the residence to John and Theora Wight in exchange for $36,000 in allegedly unspecified promissory notes owed by the corporation to Theora Wight. The directors voted to give the shareholders 30 days' written notice of the transfer, but the transfer was effected without notice by warranty deed signed November 21, 1973, five days before the shareholders' and directors' meetings, and recorded November 28, 1973.

Defendants argue that S-W Company's participation and consent

in the shareholders' decision to give the directors authority to dissolve the corporation and dispose of its assets should be deemed knowledge of the allegedly fraudulent transfer of the residence to the Wights as contained in causes of action 13 and 14.

This is untenable. By its participation in the shareholders' meeting, plaintiff cannot be held to have knowledge of any transaction occurring in a separate board of directors meeting later or to have any knowledge of whether such transactions were completed fraudulently. Clearly, plaintiff's vote as a shareholder to authorize the directors to dispose of the assets of the corporation cannot be interpreted, without more, as a vote to authorize the directors to do so fraudulently.

The District Court found that the board of directors failed to give the notice of the disposition of assets, including the residence, as called for at their board meeting of November 26, 1973. Therefore, on the record presented, it appears that the earliest date plaintiff should be deemed to have knowledge of any irregularity in the transfer of the residence is December 13, 1974, the date S-W Company sued John Wight, Inc. and John and Theora Wight to set aside the transfer of the residence. The instant action, filed October 15, 1976, is therefore timely as being filed within the two-year limit of section 93-2607(4).

For the foregoing reasons, the conclusion of the District Court that this action is not maintainable as a shareholder's derivative action is reversed. The conclusion of the District Court that causes of action 1 through 12 and 16 through 21 are barred by *res judicata* is affirmed. The conclusion of the District Court that causes of action 13 and 14 are barred by *res judicata* and by the two-year statute of limitation applicable to claims for relief from fraud are reversed. The conclusion of the District Court that cause of action 15 is barred by *res judicata* is reversed. Causes of action 13 through 15 are remanded to the District Court for further proceedings.

MR. CHIEF JUSTICE HASWELL and JUSTICES HARRISON, SHEA and SHEEHY concur.