**Thomas O. MILLIKEN, Plaintiff,**

v.

**TRI–COUNTY ELECTRIC COOPERATIVE, INC., Defendant.**

**Civ. A. No. AC–1757.**

United States District Court
D. South Carolina,
Columbia Division.

May 26, 1966.

---

Roy A. Powell and Henry Hammer, Columbia, S. C., for plaintiff.

D. W. Robinson, Robinson, McFadden & Moore, Columbia, S. C., for defendant.

1. Motion was filed January 14, 1966.

HEMPHILL, District Judge.

Thomas O. Milliken became sui juris on July 18, 1965, two days before the complaint in this action was filed. On November 29, 1963 he had been injured on or nearby Highway No. 6 near Eutawville, South Carolina, when he allegedly came into contact with a fallen wire of defendant's power distribution system. Thereafter during his treatment for the injuries in 1963 and 1964 he was removed to and confined in the Johns Hopkins Hospital, Baltimore, Maryland, for further treatment on eight different occasions for various periods. He testified that on (or by) July 20, 1965 he had established residence and domicile at 1828 East Monument Street, Baltimore, Maryland. He had "decided to move to Baltimore, Maryland." He had moved there and rented an apartment on July 16, 1965. Plaintiff is unmarried.

This suit was brought on July 20, 1965 and the issues were joined by answer on August 9, 1965. Plaintiff's demand for a jury trial was filed August 16, 1965. Defendant now moves [1] for a separate trial on the jurisdictional issue which was raised by way of a third defense in their answer: "that this court is without jurisdiction of this cause in that both parties are citizens and resident (sic) of South Carolina."

The case of Morris v. Gilmer [2] is authority that a citizen may transfer his citizenship from one state to another and even if the transfer is induced by a purpose to acquire diversity of citizenship for jurisdictional purposes his access to the federal courts will not be diminished. Citizenship theoretically can be changed instantly. It need only be the concurrence of the act and a real, not merely ostensible, intention to remain. In that case the evidence did not support a finding that there was the sine qua non, animo manendi. The Court, however, quoting Mr. Justice Story, said that "if the new citizenship is really and truly acquired, his right to sue is a legitimate,

2. Morris v. Gilmer, 129 U.S. 315, 9 S.Ct. 289, 32 L.Ed. 690 (1889).

constitutional, and legal consequence, not to be impeached by the motive of his removal."

Paraphrasing Mr. Justice Harlan in Morris v. Gilmer, "we are thus brought to the question of whether the plaintiff was entitled to sue in the district court." Was he, at the commencement of this suit, a citizen of Maryland?[3] (He is at this time, admittedly, a citizen of South Carolina.) Was there on July 20, 1965 a concurrence of the physical presence of the plaintiff in Baltimore *with* the intention to make the place his principal and permanent home?[4]

Defendant's brief cites in support of its position cases from the District of South Carolina[5] and others.[6] In each of the cases cited, the particular court necessarily made the determination upon a review of the facts revealed in support of, or opposition to, the motion. In that light this court examines the facts before it.

It is uncontradicted that plaintiff underwent numerous operations after his accident and before the move to Baltimore, and that more were contemplated. He was then a student at Clemson College, and in his application for transfer to the University of South Carolina in January 1965 he stated that he expected a number of operations during a twelve months period from that date and that he wished to be near his parents. According to his testimony and that of the parents, they all later came to fear that the emotional impact of successive operations and the residual disfigurements would cause him to feel sorry for himself, and that it would be best for his adjustment for him to go it on his own. He went to Baltimore on the 16th of July and rented an apartment for three months. (He later rented it for the month of October as well.) He opened a bank account there. It is uncontradicted that he had shipped all of his clothes except those that he needed while waiting to go to Baltimore; the clothes were not returned to Columbia until the Christmas season. He stated that he expected[7] to make Baltimore his home, and that he applied for a driver's license in Maryland but was refused because of his crippled condition resulting from the accident. He was allowed to register to vote in Baltimore.[8]

Several days after plaintiff's release from the hospital in July, he visited Co-

---

3. Defendant's trial brief states the issue clearly: "The issue here is whether the plaintiff was on July 20, 1965 a citizen of the State of Maryland or of the State of South Carolina within the meaning of 28 U.S.C.A. § 1332."

4. See Paudler v. Paudler, 185 F.2d 901 (5th Cir. 1951); Ellis v. Southeast Const. Co., 158 F.Supp. 798 (D.C.Ark.1958) rev'd 260 F.2d 280 (8th Cir. 1958); Jones v. League, 18 How. 76, 15 L.Ed. 263 (1855).

5. Miller v. Lee, 241 F.Supp. 19 (D.C.S.C. 1965); Deese v. Hundley, 232 F.Supp. 848 (D.C.S.C.1964).

6. Townsend v. Bucyrus-Erie Co., 144 F.2d 106 (10th Cir. 1944); Chaney v. Wilson-Benner, Inc., 165 F.Supp. 64 (D.C.Pa. 1959).

7. Pertinent to his expectation or intention is testimony in a deposition of August 20, 1965, before the second operation:
 Q. What is your education?
 A. At the time being I am trying to get in a branch of Johns Hopkins University in Baltimore, Maryland but I have applied and not heard from the school yet.
 * * * * *
 Q. Now where did you go to summer school this summer?
 A. The University of South Carolina, first session.
 * * * * *
 Q. Did you apply for enrollment there for the term beginning in September, 1965?
 A. No, sir, I haven't.

8. Attention of the court is called to Drueding v. Devlin, 234 F.Supp. 721 (D.C. Md.1964) for the proposition that plaintiff was not entitled to register to vote in Maryland. Were the court here passing on plaintiff's right to vote the case would no doubt pertain, but we are here plumbing the depths to ascertain plaintiff's intention. The defendants point is evidentiary and it has been duly considered.

lumbia for the purpose of arranging a trip he was to take with his uncle that had been planned several months before. His uncle was unable to make the trip immediately, and consequently plaintiff went with his parents to the beach, spent some time at his parents' home and then returned to Baltimore to await and prepare for the trip with his uncle. He made the postponed trip to Canada with his uncle and upon its completion he returned to Maryland. In September he entered the hospital for another of the series of operations. This operation required the bandaging of plaintiff's arms so that he had no use of them whatsoever, and thus was unable to take care of himself alone.

Of the two operations in Baltimore, he stated, as did his parents, that no one had expected the latter operation in September to leave him in a condition of such helplessness that he required someone to care for him and to help him with most of his personal chores. It was because of his helplessness, he stated, that he came back to South Carolina. During the fall term of 1965 he enrolled in the University of South Carolina.

It is uncontradicted, also, that he obtained a South Carolina fishing license, which showed his residence as 31 Heathwood Circle, Columbia, South Carolina, a driver's license in February 1965, and in September 1965 a hunting license. Further, that he lived in his father's home *more* than he lived in the Baltimore apartment during the months for which the rent was paid.

His application for admittance to the University of South Carolina in the fall of 1965 reflected a South Carolina citizenship. He explained that the reason he had given that information on the application was that he had been advised on applying to the school that by dint of having been registered in the school in the spring term of 1965 and the summer school he could register then as a resident and pay the cheaper tuition fees.

He registered at the Columbia Draft Board in June of 1965 and the address he listed at that time has never been changed.

At the hearing on the matter the testimony of Milliken, his father and mother was presented in person to the court. A part of this court's determination is, therefore, based upon its finding as to the credibility of the statements made by the witnesses, as well as the testimony in the various depositions, and the exhibits. Counsel have agreed that the entire file would be made a part of the record, and this file has been examined and considered.

But what of the question of time—the paucity of days actually spent in Maryland and outside of the hospital? This court will not say the ridiculous time of one second would suffice to establish citizenship nor will it attempt to say what minimum would be satisfactory. Neither by statute nor common law through the years have the courts in their experience and judgment prescribed a yardstick of time. It is enough that there be a concurrence of physical presence and the intention to remain with no present intention of going elsewhere.[9]

 This court must give credence to and weigh the evidence before it. It is convincing that plaintiff has met the test. On July 20, 1966, he was a citizen of Maryland.

There is no evidence of fraud or collusion here.

The court has jurisdiction. Plaintiff may proceed.

And it is so ordered.

---

**9.** See Wright, Federal Courts §§ 26 and 31 (1963); 1 Barron & Holtzoff, Federal Practice and Procedure § 26 n. 87 (Wright's ed. 1960).