## Iris COGGINS

### v.

**R. R. M. CARPENTER, Jr., William H. Lamb, Mary Kaye Carpenter Murray, County of Chester, John H. Wollman, Edward G. Conroy, James H. McQueen, Larry Smith, James Shaefer and Thomas Smith.**

**Civ. A. No. 78–2246.**

United States District Court,
E. D. Pennsylvania.

March 22, 1979.

David S. Shrager, Philadelphia, Pa., for plaintiff.

Richard A. Kraemer, Gregory M. Harvey, Philadelphia, Pa., Thomas O. Malcolm, John S. Halsted, West Chester, Pa., Lawrence E. Grant, Paoli, Pa., William T. Hangley, G. Wayne Renneisen, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION

BECHTLE, District Judge.

Plaintiff Iris Coggins ("Coggins"), allegedly a citizen and resident of the State of New York, brought this civil rights action[1] against the following defendants: (1) R. R. M. Carpenter, Jr. ("Carpenter"), a citizen and resident of the State of Delaware; (2) William H. Lamb ("Lamb"), a citizen and resident of the Commonwealth of Pennsylvania, who is sued in his capacity as a member of the bar of Pennsylvania maintaining offices in West Chester, Pennsylvania, and in his capacity as the District Attorney of Chester County, Pennsylvania; (3) Mary Kaye Carpenter Murray ("Murray"), a citizen and resident of Delaware and who is Carpenter's daughter; (4) the County of Chester ("County"); (5) John H. Wollman ("Wollman"), a citizen and resident of Pennsylvania, who is sued in his capacity as a member of the bar of Pennsylvania maintaining offices in West Chester, Pennsylvania, and in his capacity as Deputy District Attorney of Chester County; (6) Edward G. Conroy ("Conroy"), a citizen and resident of Pennsylvania, who is a member of the bar of Pennsylvania maintaining offices in West Chester, Pennsylvania; (7) James H. McQueen ("McQueen"), a citizen and resident of Pennsylvania, who is sued solely in his capacity as Sheriff of Chester County; (8) Larry Smith ("Smith"), a citizen and resident of Pennsylvania, who is sued solely in his capacity as Deputy Sheriff of Chester County; (9) James Shaefer ("Shaefer"), a citizen and resident of Pennsylvania, who is sued solely in his capacity as the Chief of Police of the Borough of Kennett Square, Pennsylvania; (10) Thomas Smith, an accountant who is a citizen and resident of Delaware; and, (11) William DuPont ("DuPont"), a citizen and resident of Delaware.[2] Lamb, Wollman and Conroy are alleged to be partners and/or associates in the law firm of Lamb, Windle and McErlane; and Thomas Smith is alleged to be employed by Carpenter. In her amended complaint ("complaint"), Coggins alleges claims against each of the defendants based upon: (1) 42 U.S.C. §§ 1983 and 1985; (2) the Fourteenth Amendment to the United States Constitution, as that amendment incorporates her rights under the Fourth, Fifth and Eighth Amendments to the United States Constitution; and, (3) state law. The specific state law claims asserted by Coggins against each of the defendants are: (1) negligence; (2) outrageous conduct; (3) assault and battery; (4) malicious prosecution and abuse of process; and, (5) civil conspiracy. In addition, she alleges a state constitutional claim against the County based upon Article I, § 26 of the Pennsylvania Constitution. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331(a), 1332(a) and 1343, and the amount in controversy is alleged to exceed $10,000, exclusive of interest and costs. No pendent jurisdiction is alleged.

---

1. In a previous action, *Coggins v. McQueen*, 447 F.Supp. 960 (E.D.Pa.1978), Coggins named as defendants James H. McQueen, individually and as Sheriff of Chester County; Larry Smith, individually and as Deputy Sheriff of Chester County; [Mary] Kaye Carpenter Murray; and, the County of Chester. She asserted claims based upon 42 U.S.C. §§ 1983, 1985 and 1986 and state common law. The jurisdiction of this Court was invoked pursuant to 28 U.S.C. §§ 1331, 1343(1), (2), (3), (4) and pendent jurisdiction. By Memorandum and Order dated March 30, 1978, this Court granted the motions of the County, James H. McQueen and Murray to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). In addition, the Fed.R.Civ.P. 12(b)(6) motion of Larry Smith was granted as to the claims based upon 42 U.S.C. §§ 1985 and 1986 and denied the motion as to the claims based upon 42 U.S.C. § 1983 and state common law.

2. By stipulation of all parties filed January 15, 1979, the complaint was dismissed as to DuPont.

The facts, as alleged in the complaint and as pertinent to this Opinion, are as follows: Murray, the estranged wife of Coggins' brother, Peter Coggins, has since July of 1976 been represented by Lamb, Wollman and Conroy and the firm of Lamb, Windle and McErlane in connection with certain domestic relations and property matters then pending between Murray and Peter Coggins. In connection with this representation, Murray, Lamb, Wollman and Conroy conspired among themselves and with one or more of the other defendants to obtain a writ of seizure ("writ") authorizing the removal of certain personal property from the home of Peter Coggins. On July 16, 1976, Murray, Wollman, Smith, DuPont, Thomas Smith, a secretary, a photographer and moving-van personnel appeared at Peter Coggins' home to execute the writ. In the course of this execution, the burglar alarm was neutralized, a maintenance man was advised to remain in the barn, lookouts were posted and virtually every item of personal property was removed from Peter Coggins' home.

Coggins, driving Peter Coggins' car, arrived at her brother's home at approximately 4:00 p. m. while the defendants named above were executing the writ. Discovering that property was being removed from her brother's home, she removed the keys from Murray's car, which she had recognized, and, intending to notify her brother and the State Police attempted to drive away. Murray recognized Coggins and requested one or more of the other defendants to stop her. Smith, who was dressed in civilian clothes, attempted to prevent Coggins from leaving by, *inter alia*, assaulting and battering her. Coggins managed to drive away from the area but was followed by Smith in an unmarked car with which he repeatedly rammed and smashed into Coggins' car. Smith then forced Coggins into a roadblock set up by the Kennett Square Police Department, acting under the direction of Shaefer. When Coggins stopped her car, Smith, Shaefer and/or one or more of their agents or employees committed various torts against Coggins which caused her bodily and psychological injury. She

was then handcuffed and transported to the Kennett Square Police Headquarters, where she was denied adequate medical attention.

Subsequent to these events, criminal charges were brought against Coggins in the Count of Common Pleas of Chester County by one or more of the defendants acting with the knowledge and approval of Lamb. Coggins was acquitted by a jury on all counts. Coggins alleges that these criminal charges were maliciously initiated and brought without reasonable or probable cause.

Lamb, Wollman, Conroy, Murray and Carpenter have each moved to dismiss Coggins' complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of diversity of jurisdiction. Murray and Carpenter have also moved to dismiss, pursuant to Fed.R.Civ.P. 12(b)(2) and (5), for lack of personal jurisdiction and for insufficiency of service of process, respectively. In addition, the County, Lamb, Wollman, Conroy, Smith, McQueen, Murray and Carpenter have each moved to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. Shaefer and Thomas Smith have not filed any motions to dismiss. For the reasons stated below, we will: (1) grant the Fed.R.Civ.P. 12(b)(1) motions of Lamb, Wollman, Conroy, Murray and Carpenter to dismiss Coggins' state law claims for lack of subject matter jurisdiction; (2) grant Murray's and Carpenter's motions to dismiss the complaint as to them for lack of personal jurisdiction and for insufficiency of service of process, pursuant to Fed.R.Civ.P. 12(b)(2) and (5), respectively; (3) grant the motions of Murray, Carpenter, the County and McQueen to dismiss the claims based upon 42 U.S.C. §§ 1983 and 1985 and the Fourteenth Amendment for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6); (4) grant the Fed.R.Civ.P. 12(b)(6) motions of Lamb, Wollman and Conroy to dismiss the claims based upon 42 U.S.C. § 1985 and deny their Fed.R.Civ.P. 12(b)(6) motions to dismiss the claims based upon 42 U.S.C. § 1983; (5) grant the Fed.R.Civ.P. 12(b)(6) motion of Smith to dismiss the claims based upon 42

U.S.C. § 1985 and the Fourteenth Amendment and deny his Fed.R.Civ.P. 12(b)(6) motion to dismiss the claim based upon 42 U.S.C. § 1983; and, (6) dismiss *sua sponte*, pursuant to Fed.R.Civ.P. 12(b)(6), the claims against Shaefer and Thomas Smith based upon 42 U.S.C. § 1985.

## I.  *Fed.R.Civ.P. 12(b)(1)*

In her complaint, Coggins alleges that she is a citizen and resident of the State of New York and that the defendants are all citizens and residents of either Pennsylvania or Delaware.  She also alleges jurisdiction over these defendants with respect to her state law claims on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1332(a). Coggins does not invoke this Court's pendent jurisdiction.

In their Fed.R.Civ.P. 12(b)(1) motions to dismiss, Lamb, Wollman, Conroy, Murray and Carpenter argue that Coggins is, in fact, a citizen and resident of Pennsylvania and that, therefore, this Court lacks diversity jurisdiction to entertain Coggins' state law claims.  However, none of these moving defendants has submitted any affidavits or other material to the Court other than legal memoranda to support their arguments.  Coggins has responded to these particular allegations with a mere denial and, likewise, has submitted no material to this Court other than a brief reply memorandum.

 ■ It is well settled that there is a presumption against the existence of federal jurisdiction and that the party invoking the federal court's jurisdiction bears the burden of proof.  *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974). It is also well settled that there is a presumption in favor of an original or former domicile as opposed to an acquired one. *Herzog v. Herzog,* 333 F.Supp. 477, 478 (W.D.Pa.1971).  On the face of the complaint, Coggins has overcome these presumptions by properly pleading subject matter jurisdiction based upon 28 U.S.C. § 1332(a).  However, if a defendant properly challenges the plaintiff's jurisdictional allegations, the burden of proof is again upon the plaintiff to support those jurisdictional allegations by a preponderance of the evidence.  *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936);  *Mas v. Perry,* 489 F.2d 1396, 1399 (5th Cir.), *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974); *Nelson v. Kiefer,* 451 F.2d 289, 296 (3d Cir. 1971).  Furthermore, if the parties do not raise the issue of jurisdiction, it is the duty of the federal court to raise the issue *sua sponte.  Basso v. Utah Power & Light Co., supra,* 495 F.2d at 909;  Fed.R.Civ.P. 12(h)(3).  Whenever and however the factual issue of jurisdiction is raised, the federal court may evaluate for itself by means of affidavits, hearings, etc., whether or not subject matter jurisdiction does in fact exist.  *Cf. Mortensen v. First Fed. S & L Assoc.,* 549 F.2d 884 (3d Cir. 1977).

 ■ In this case, the Court is not sure that the defendants have "properly" challenged the jurisdictional allegations of Coggins' complaint.  However, because the issue has been raised, it is incumbent upon this Court to assure itself of its jurisdiction over Coggins' state law claims pursuant to 28 U.S.C. § 1332(a).  Because the Court was unable to determine that issue on the basis of the record before it, a hearing was held on the Fed.R.Civ.P. 12(b)(1) motions of Lamb, Wollman, Conroy, Murray and Carpenter at which all counsel of record in this case were requested to be present.  As a result of the testimony and exhibits received at that hearing on the issue of Coggins' invocation of this Court's diversity jurisdiction, we hold that Coggins has not satisfied her burden of establishing by a preponderance of the evidence that she was a citizen of the State of New York at the time the complaint was filed.

 ■ For the purpose of determining a party's citizenship within the meaning of the general diversity statute, the Court must determine the party's "domicile" at the time the complaint was filed.  *Conolly v. Taylor,* 27 U.S. 556, 2 Pet. 556, 7 L.Ed. 518 (1829);  *Brown v. Fennell,* 155 F.Supp. 424 (E.D.Pa.1957).  To establish domicile, a

party must show that he is a resident of a particular state and that he has an intent to remain there for the indefinite future. *Sun Printing & Publishing Ass'n v. Edwards,* 194 U.S. 377, 24 S.Ct. 696, 48 L.Ed. 1027 (1904). In making the determination, the Court must consider the surrounding circumstances and must view all relevant factors. *See Krasnov v. Dinan,* 465 F.2d 1298, n. 2 (3d Cir. 1972).

Although there is a presumption in favor of a former domicile over a newly acquired one, a minimum period of residence is not needed, *Milliken v. Tri-County Elec. Coop., Inc.,* 254 F.Supp. 302 (D.S.C. 1966), and a party may establish a new domicile upon a showing of both a physical presence and an intention to remain in the new jurisdiction. *Morris v. Gilmer,* 129 U.S. 315, 9 S.Ct. 289, 32 L.Ed. 690 (1889); *Paudler v. Paudler,* 185 F.2d 901 (5th Cir.), *cert. denied,* 341 U.S. 920, 71 S.Ct. 742, 95 L.Ed. 1354 (1950). *See also* Restatement 2d, Conflict of Laws § 16. In addition, a party's motive in attempting to acquire a new domicile is not directly relevant to the Court's determination of whether the new domicile has, in fact, been established. *Williamson v. Osenton,* 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758 (1914); *Peterson v. Allaty Ins. Co.,* 472 F.2d 71 (2d Cir. 1972). With these principles in mind, the Court finds the following facts to be relevant and credible.

For many years, Coggins maintained a home in Chester County, Pennsylvania. For the period between 1967 and 1977, she resided at the Rob Roy Farm in Chester County, of which she was a one-quarter owner in common with other family members. Coggins maintained substantial personal possessions at Rob Roy Farm and it was primarily there that she engaged in her profession as a horse trainer and breeder. In July, 1976, Coggins was seriously injured allegedly as a result of the actions of the defendants and, by May of 1978, her physician informed her that she would not be able to ride horses again. At that time, Coggins determined to move out of the rural setting of Chester County so she would not be reminded daily of her inability to ride. Also at that time, Coggins' retained counsel advised her that, if she had plans to move out of Chester County anyway, it would be to her advantage to move to a different state before the period of limitations lapsed on certain of her claims on July 3, 1978.

During the month of June, 1978, Coggins spent two or three nights as a guest of a family friend, a Mr. Zappi, at his residence at 521 Park Avenue, New York City. Also during the month of June, Coggins attended two job interviews in New York City and opened a bank account. On June 27, 1978, Coggins signed a lease with Mrs. Elvira Markley for the rental of an apartment at 136 East 56th Street, New York City, but the lease was backdated, at Coggins' request, to June 1, 1978. It was agreed that Coggins would take possession when the present tenants vacated on July 15 and that no rent would accrue until that date, although a security deposit was paid by Coggins upon the signing of the lease. Coggins left for Rome, Italy, on June 30, 1978, from Philadelphia and did not return until July 15, 1978. On July 3, 1978, the complaint was filed.

After her return from Rome on July 15, Coggins stayed for approximately one to two weeks at the apartment at 136 East 56th Street before she decided she would not be able to continue there because of her dissatisfaction with the landlord and her general unhappiness there. She returned to Mr. Zappi's apartment at 521 Park Avenue and entered into a lease with Mr. Zappi in August for her use of the apartment. Even though the lease was executed in August, it was backdated to read "as of June 15." Coggins began working in New York in August as a receptionist in a law office and has worked and resided there until the present time.

During the month of June, 1978, Coggins did not keep any belongings or property in New York, although she did continue to keep her property in Chester County, Pennsylvania. In addition, during this period, Coggins represented her address at various times as being 521 Park Avenue (an insur-

ance claim form), 136 East 56th Street (a job application filled out two days before she leased the 56th Street apartment), and Rob Roy Farm (an application for the lease of the 56th Street apartment).

We find that Coggins had not established domicile in New York as of July 3, 1978. The Court places emphasis on the following factors: (1) Coggins spent only two or three nights in New York during the month of June—while the establishment of a long-term residence is not required, the Court is convinced that the brief, transitory presence as a houseguest for two or three nights during the entire month is not sufficient to establish the requisite physical presence or to demonstrate an intent to remain in New York indefinitely; (2) Coggins' admitted awareness of the importance of establishing diversity of citizenship for the purposes of this suit further reduces the probative value of her clearly inconsistent declarations as to her residence; (3) Coggins did not have any substantial possessions in New York before July 3, but maintained all of her possessions in Chester County, Pennsylvania, at the Rob Roy Farm; (4) although Coggins probably established New York as her domicile subsequent to her return from Rome, her subsequent actions are not directly relevant to our determination of her domicile on July 3; (5) we note that the backdating of the leases for the two apartments reinforces our finding that Coggins was, at most, a transitory houseguest during the minimal time she spent in New York before July 3; and, (6) Coggins had minimal ties with New York as of July 3 in that she did not work there, did not pay taxes there and, in general, retained her ties with Rob Roy Farm. Accordingly, we will grant the Fed.R.Civ.P. 12(b)(1) motions of Lamb, Wollman, Conroy, Murray and Carpenter to dismiss Coggins' state law claims for lack of subject matter jurisdiction. In addition, the Court will *sua sponte* dismiss the state law claims against the County, McQueen, Smith and Thomas Smith for lack of subject matter jurisdiction.

## II. *Fed.R.Civ.P. 12(b)(2) and (5)*

Murray and Carpenter have each moved to dismiss for lack of personal jurisdiction and for insufficiency of service of process, pursuant to Fed.R.Civ.P. 12(b)(2) and (5), respectively. In support thereof, Murray argues that service of process upon her, a citizen and resident of Delaware, was insufficient in that a copy of the complaint was not sent by registered mail to the Secretary of the Commonwealth of Pennsylvania. Carpenter argues that he, a citizen and resident of Delaware, was not served by registered mail at his correct place of business.

Coggins' complaint alleges that Murray and Carpenter are citizens and residents of Delaware. Fed.R.Civ.P. 4(e) provides, in pertinent part, that service of process upon a party not found within the state in which the district court sits may be served in accordance with a statute or rule of court of that state. Pennsylvania Rule of Civil Procedure 2079(a), Pa.R.C.P. No. 2079(a), 42 Pa.C.S.A., which governs service of process upon nonresident defendants provides, in pertinent part:

> . . . process may be served upon the defendant personally or by having the sheriff of said county send by registered mail, return receipt requested, a true and attested copy of the process:
>
> (1) to the Secretary of the Commonwealth, accompanied by the fee prescribed by law, and
>
> (2) to the defendant at his last known address with an endorsement thereon showing that service was made upon the Secretary of the Commonwealth.

*See also Vespe Contracting Co. v. Anvan,* 433 F.Supp. 1226, 1231–1232, n. 3–7 (E.D. Pa.1977); 42 Pa.C.S.A. § 8301 *et seq.* (Supp. 1978-1979). The docket in this case reveals that service was made upon Murray and Carpenter by certified mail. *See* Pennsylvania Rule of Civil Procedure 76, Pa.R.C.P. No. 76, 42 Pa.C.S.A. The docket does not indicate that service was made upon the Secretary of the Commonwealth, as required by Rule 2079(a). Accordingly, we find that Coggins' service of process upon Murray and Carpenter was insufficient and

that this Court, therefore, lacks personal jurisdiction over both Murray and Carpenter. Murray's and Carpenter's Fed.R.Civ.P. 12(b)(2) and (5) motions will, therefore, be granted and the complaint will be dismissed as to them.

### III. *Fed.R.Civ.P. 12(b)(6)*

■■■ Before turning to the issues raised by the defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court notes preliminarily that, in ruling upon a motion to dismiss for failure to state a claim upon which relief can be granted, a court must accept as true all well-pleaded allegations of the complaint, construing them in a light most favorable to the plaintiff. *Scheur v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Helstoski v. Goldstein,* 552 F.2d 564, 565 (3d Cir. 1977). All well-pleaded allegations of the complaint are taken as admitted, and the Court's inquiry must be directed to whether the allegations in the complaint constitute a cause of action under Fed.R.Civ.P. 8(a). 5 Wright and Miller, *Federal Practice and Procedure,* § 1357. The Court must construe the complaint liberally and resolve all doubts in favor of the plaintiff. *Bulkin v. Western Kraft East, Inc.,* 422 F.Supp. 437, 439 (E.D.Pa.1976). Finally, a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Furthermore, even if a party does not make a formal motion to dismiss, the Court may on its own initiative dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R. Civ.P. 12(b)(6), where the inadequacy of the complaint is apparent as a matter of law. *See generally,* 5 Wright and Miller, *Federal Practice and Procedure,* § 1357. Accordingly, although Shaefer and Thomas Smith have not filed motions to dismiss, and although we have ruled that this Court lacks personal jurisdiction over Murray and Carpenter, in the interest of judicial economy and in light of the apparent inadequacy of Coggins' federal claims against Shaefer, Thomas Smith, Murray and Carpenter, with the exception of Coggins' claims against Shaefer and Thomas Smith based upon 42 U.S.C. § 1983, we will include those four defendants in our determinations of the moving defendants' Fed.R.Civ.P. 12(b)(6) motions.

### A. *42 U.S.C. § 1985*

The County, Murray, Carpenter, Lamb, Wollman, Conroy, McQueen and Smith have each moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss Coggins' claims based upon 42 U.S.C. § 1985 and have each set forth various arguments in support of their respective motions. We need not address these specific arguments, however, for we find as a matter of law that Coggins has failed to state a claim against any of the defendants named in this action based upon 42 U.S.C. § 1985.

■■■ In *Novotny v. Great American Fed. S & L Assoc.,* 584 F.2d 1235 (3d Cir. 1978), the Third Circuit, in a thorough analysis of 42 U.S.C. § 1985, reaffirmed the rule that a cause of action based upon 42 U.S.C. § 1985 requires that there be some "class based, invidiously discriminatory animus underlying the conspirators' action." *Id.,* at 1240. A fair reading of Coggins' complaint reveals that she has alleged no such class-based animus. She has, therefore, failed as a matter of law to state a claim based upon 42 U.S.C. § 1985 upon which relief can be granted. Accordingly, Coggins' claims based upon 42 U.S.C. § 1985 will be dismissed as to each of the defendants.

### B. *42 U.S.C. § 1983*

#### 1. *The County, Murray and McQueen*

In support of their Fed.R.Civ.P. 12(b)(6) motions to dismiss, the County, Murray and McQueen argue, *inter alia,* that Coggins' claims pursuant to 42 U.S.C. § 1983 are barred by the doctrine of *res judicata.* We agree.

■■■ The doctrine of *res judicata* operates to bar:

"repetitious suits involving the same cause of action. [The bar] rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' . . . "

*Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 578–579, 94 S.Ct. 806, 811–12, 39 L.Ed.2d 9 (1974), *quoting Cromwell v. County of Sac,* 94 U.S. 351, 352, 24 L.Ed. 195 (1876); *see also Lawlor v. Nat'l Screen Service Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 78, 92 L.Ed. 342 (1948). For the doctrine of *res judicata* to operate as a bar, it must be established that: (1) the same parties or parties in privity with them were present in the prior litigation; (2) a court of competent jurisdiction has entered a valid, final judgment on the merits; and, (3) the present action concerns the same subject matter or cause of action as the prior suit. *Sworob v. Harris,* 451 F.Supp. 96, 99–100 (E.D.Pa.), *aff'd mem.,* 578 F.2d 1376 (3d Cir. 1978); *Auritt v. Wheatcroft,* 370 F.Supp. 948, 951 (E.D. Pa.1974). With respect to the first element, the doctrine of *res judicata* operates to bar a subsequent action against parties, or their privies, to a prior action even though the subsequent action names fewer or more parties than the previous action. *Cf. Raitport v. General Motors Corp.,* 450 F.Supp. 1349, 1352 (E.D.Pa.1978). With regard to the second element, the dismissal of an action pursuant to a Fed.R.Civ.P. 12(b)(6) motion to dismiss by a court of competent jurisdiction is a valid, final judgment on the merits for purposes of *res judicata* if that dismissal was based upon the ultimate and controlling issues and if the parties had an opportunity to appeal and assert their rights. *Hubicki v. ACF Industries, Inc.,* 484 F.2d 519, 523 (3d Cir. 1973); *Ley v. Boron Oil Co.,* 454 F.Supp. 448, 450, n. 2 (W.D.Pa. 1978); *Holt Hauling and Warehousing Systems, Inc. v. Rapistan,* 448 F.Supp. 991, 996 (E.D.Pa.1978). Finally, with regard to the third element, while the term "cause of action" has not been precisely defined within the *res judicata* context, *Donegal Steel Foundry Co. v. Accurate Products Co.,* 516 F.2d 583, 588, n. 10 (3d Cir. 1975), one method of determining whether two cases involve the same cause of action is to examine whether:

. . . the plaintiff had a "reasonable opportunity" to advance in his first day in court those claims or theories of recovery which he advances in his second. Stated differently, the plaintiff is not entitled to another day in court if he merely proposes a different theory of recovery based upon the same "liability creating conduct" of the defendant which gave rise to the first action, *Williamson v. Columbia Gas & Electric Corp.,* 186 F.2d 464 (3d Cir. 1950), *cert. denied* 341 U.S. 921, 71 S.Ct. 743, 75 L.Ed. 1355 (1951).

*Ley v. Boron Oil Co., supra,* 454 F.Supp. at 450. In other words, merely adding some facts, naming additional defendants or proposing a different theory of recovery will not convert one cause of action into a second cause of action if both actions involve the same liability-creating conduct on the part of the defendants and the same alleged invasion of the plaintiff's rights. *Id.; see also Walworth Co. v. United Steelworkers of America,* 443 F.Supp. 349, 351 (W.D.Pa.1978); *Denckla v. Maes,* 313 F.Supp. 515, 523 (E.D.Pa.1970).

In *Coggins v. McQueen,* 447 F.Supp. 960 (E.D.Pa.1978) ("Coggins I"),[3] Coggins named the County, Murray, McQueen and Smith as defendants; asserted claims based upon 42 U.S.C. §§ 1983, 1985 and 1986 as well as unspecified state common law; and, invoked the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331, 1343(1), (2), (3) and (4) and pendent jurisdic-

---

**3.** *See* note 1, *supra.*

tion. In that case, we granted the Fed.R. Civ.P. 12(b)(6) motions of the County, McQueen and Murray with regard to all of the claims against them and of Smith with regard to all but the claims based upon 42 U.S.C. § 1983 and state law. Our decision was rendered after giving the parties a full and fair opportunity to be heard and was a resolution of the ultimate and controlling issues. In the present action, Coggins names as defendants the County, Murray, McQueen and Smith, plus six additional defendants; alleges claims based upon 42 U.S.C. §§ 1983 and 1985, the Fourteenth Amendment and specified state common law; and, invokes the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331(a), 1332(a) and 1343. The factual allegations of the second complaint begin at an earlier chronological point in time, include and elaborate upon the factual allegations contained in the first complaint and, in essence, merely differs from the factual allegation of the first complaint in that the conduct which presumably led to the actions described in the first complaint is included in the second. The second complaint also contains more detail than the first and seems to emphasize liability based more upon allegations of conspiracy than upon vicarious liability, as relied upon in the first complaint. A fair reading of the second complaint demonstrates that it totally encompasses all of the factual allegations and some of the legal theories of the first and merely expands upon them; that it involves the same alleged invasion of Coggins' rights by the same liability-creating conduct on the part of the defendants; and, that the additional defendants and factual allegations and different legal theories alleged in the second complaint must have been available to or known to Coggins at the time of the filing of the first complaint. Cf., e. g., Gagliardi v. Flint, 564 F.2d 112 (3d Cir. 1977), cert. denied, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978). In summary, the present action involves four of the same parties as the first; was filed after a valid, final judgment on the merits was rendered by a court of competent jurisdiction with regard to the first; is based upon the same cause of action as the first; and, contains factual and legal allegations which would have been available to sustain or defeat the prior claim. Accordingly, it is barred by the doctrine of res judicata insofar as it alleges claims based upon, inter alia, 42 U.S.C. § 1983 against the County, Murray and McQueen.

■ One final point requires the Court's attention. In Coggins I, the Court granted the County's motion to dismiss on the ground that it was not a "person" within the meaning of § 1983. Since that decision, the Supreme Court, in Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), overruled Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1967), and held that a municipality is a "person" within the meaning of § 1983. We note that a change in the governing law subsequent to a determination on the merits does not necessarily preclude the application of the doctrine of res judicata. Cf. Barzin v. Selective Service Local Bd., 446 F.2d 1382 (3d Cir. 1971). However, even if the doctrine of res judicata did not apply because of the change in the law caused by Monell, we would grant the County's Fed.R.Civ.P. 12(b)(6) motion on the ground that, although the Supreme Court in Monell held that a municipality was a "person" within the meaning of § 1983, it also held that a municipality could not be liable under § 1983 for an injury inflicted solely by its agents or employees. Rather, Monell held that a municipality could only be liable under § 1983 "when execution[s] of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy inflicts the injury . . . ." Monell v. New York City Dept. of Social Services, supra, 436 U.S. at 694, 98 S.Ct. at 2038. Because Coggins' complaint fails to allege that the agents or employees of the County were implementing or executing a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," Id., at 690, 98 S.Ct. at 2036, the Court holds that, even if Coggins was

not barred by the doctrine of *res judicata* from asserting her § 1983 claims against the County, she has failed to state a claim against the County pursuant to 42 U.S.C. § 1983 upon which relief can be granted.

### 2. *Carpenter*

In her complaint, Coggins alleges that Carpenter is a citizen and resident of Delaware, that he is Murray's father and that he is Thomas Smith's employer. Complaint, ¶¶ 1, 4, 13. She does not allege that Carpenter conspired with any of the other defendants, that he was present during the course of any of the actions or occurrences outlined in the complaint or that he was aware of or acquiesced in any of those actions or occurrences. The Court holds, therefore, that Coggins has failed, as a matter of law, to state a claim pursuant to 42 U.S.C. § 1983 against Carpenter for the reasons, *inter alia,* that § 1983 liability cannot be based on a theory of vicarious liability, *see Coggins I, supra,* 447 F.Supp. at 966, and that Coggins has failed to allege that Carpenter " 'acted under color of state law,' " a requisite element for claims based upon § 1983, *see Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### 3. *Lamb, Wollman, Conroy, Smith, Shaefer and Thomas Smith*

In support of his motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), Smith argues, *inter alia,* that he is immune from liability based upon 42 U.S.C. § 1983 for actions taken in good faith in the exercise of his lawful duties. Lamb, Wollman and Conroy argue, *inter alia,* in support of their Fed.R. Civ.P. 12(b)(6) motions that Coggins lacks standing to assert claims based upon an alleged injury to the rights of her brother, Peter Coggins. In addition, Lamb and Wollman argue that, to the extent that they are sued in their capacities as District Attorney and Deputy District Attorney of Chester County, respectively, they are unqualifiedly immune from suit. Shaefer and Thomas Smith have not filed motions to dismiss.

To state a claim based upon 42 U.S.C. § 1983, Coggins must allege that the defendants deprived her of a right secured by the Constitution and laws of the United States and that the defendants deprived her of this constitutional right while acting "under color of state law." *Id.; Monroe v. Pape,* 365 U.S. 167, 184, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Allegations of a denial of due process and of equal protection, of bodily harm, of false arrest and of abuse of process may be sufficient to satisfy the requirements of the first element. *See, e. g., Monroe v. Pape, supra; Howell v. Cataldi,* 464 F.2d 272 (3d Cir. 1972). The second element, that the defendants acted "under color of state law," is satisfied if the complaint alleges that the alleged constitutional deprivations resulted from a " '[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " *Screws v. United States,* 325 U.S. 91, 107–113, 65 S.Ct. 1031, 1039, 89 L.Ed. 1495 (1945); *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). Law enforcement officers and prosecutors acting in their official capacities are acting "under color of law." *Monroe v. Pape, supra,* 365 U.S. at 172–187, 81 S.Ct. 473; *Basista v. Weir,* 340 F.2d 74 (3d Cir. 1965). Purely private action is, by definition, not actionable under 42 U.S.C. § 1983. However, private individuals who act jointly with and in concert with a state officer are considered to have become agents of the state and to have acted under color of state law. *Adickes v. S. H. Kress & Co., supra,* 398 U.S. at 152, 169–171, 90 S.Ct. 1598; *Jennings v. Shuman,* 567 F.2d 1213, 1220 (3d Cir. 1977). Finally, a person has standing to assert claims under 42 U.S.C. § 1983 if that person was aggrieved or injured by the conduct, even if that person was not the object of the conduct allegedly in violation of 42 U.S.C. § 1983. *Cf. Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972); *Novotny v. Great American Federal Savings & Loan Assoc., supra,* 584 F.2d at 1256.

Applying the above standards to the facts of this case, the Court finds that Coggins has stated a claim based upon 42

U.S.C. § 1983 against Lamb, Wollman, Conroy, Smith, Shaefer and Thomas Smith. First, in Count VI of her complaint, Coggins alleges that the defendants deprived her of constitutionally protected rights, privileges or immunities in violation of 42 U.S.C. § 1983; and the actions of the defendants outlined in the complaint, read in a light most favorable to Coggins, would, if proven, rise to the level of a constitutional deprivation. Second, Lamb, Wollman, Smith and Shaefer are alleged to have acted at all times both in their capacities as individuals and as prosecutors or law enforcement officials. Conroy and Thomas Smith, private individuals, are alleged to have actively conspired with these county officials to deprive Coggins of her constitutional rights. The conduct of the four county officials, to the extent they were acting in their capacities as county officials, was clearly conduct taken "under color of state law"; and the allegations of conspiratorial conduct on the part of Conroy and Thomas Smith are sufficient, albeit barely, to cloak them with state action within the meaning of 42 U.S.C. § 1983. Furthermore, although Coggins was clearly not the object of the alleged conspiracy at its inception, she was allegedly injured by conduct taken in furtherance of, or to conceal, the conspiracy and, accordingly, she has standing to bring this action.

(a) *Lamb and Wollman—qualified immunity*

■ Lamb and Wollman argue, however, that, to the extent they are sued in their capacities as District Attorney and Deputy District Attorney of Chester County, respectively, they are unqualifiedly immune from suit under *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). However, in *Imbler v. Pachtman, supra,* the Supreme Court held only that:

. . . in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983. . . .

*Id.,* at 431, 96 S.Ct. at 995. In so holding, the Supreme Court noted that:

We agree with the Court of Appeals that respondent's activities were intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force. We have no occasion to consider whether like or similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate.

*Id.,* at 430–431, 96 S.Ct. at 995 (footnotes omitted). This language in *Imbler* has been construed by the Third Circuit in *Thompson v. Burke,* 556 F.2d 231, 240 (3d Cir. 1977), as leaving undisturbed its decision in *Bauers v. Heisel,* 361 F.2d 581 (3d Cir. 1966) (en banc), which governs the law of unqualified immunity with respect to judicial officers. *See also Skehan v. Board of Trustees of Bloomsburg St. College,* 538 F.2d 53, 62 (3d Cir.) (en banc), *cert. denied,* 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976). In *Bauers,* the Third Circuit held that a prosecuting attorney should be granted the same immunity as is afforded members of the judiciary, which was delineated as being unqualified as it pertained to acts clearly within their jurisdiction. *Bauers v. Heisel, supra,* 361 F.2d at 590–591. However, the Third Circuit in *Bauers* also stated that the immunity afforded a prosecutor was not absolute or without limitation. *Ibid.* Rather, the same guidelines ascribed to judicial immunity were applied to prosecutorial immunity: if a prosecutor acts within the scope of his jurisdiction, even if he acts in excess of that jurisdiction, or maliciously or corruptly, he is unqualifiedly immune from liability; but if a prosecutor acts in an area where he clearly lacks all jurisdiction over the subject matter, he is not entitled to absolute, unqualified immunity for his conduct. *Ibid.* When acting outside the clear scope of his jurisdiction, a prosecutor is entitled to, at most, a qualified good faith immunity. *Helstoski v. Goldstein, supra,* 552 F.2d at 566; *cf. Jennings v. Shuman, supra,* 567 F.2d at 1221–1222.

In the present case, Lamb is alleged to have acted at all times both in his capacity as a private attorney and in his capacity as District Attorney of Chester County when he conspired to obtain a writ of seizure

authorizing the removal of personal property from the home of Peter Coggins and when he caused a criminal action to be brought against Coggins in the Court of Common Pleas of Chester County. Complaint, ¶¶ 15–17, 20, 23, 33. Wollman is alleged to have acted at all times in his capacity as a private attorney and in his capacity as Deputy District Attorney of Chester County when he conspired with Lamb and others to obtain a writ of seizure against the property of Peter Coggins and assisted in the execution of the writ. Complaint, ¶¶ 6, 14–16, 18, 20, 22–24.

■ Under the rule enunciated in *Imbler,* Lamb would be unqualifiedly immune from § 1983 liability for his conduct in connection with the initiation and presentation of the prosecution of Coggins in the Court of Common Pleas of Chester County. However, the extent to which Lamb and Wollman are alleged to have acted other than in initiating and presenting a prosecution presents an issue as to whether Lamb or Wollman were acting within or without the scope of their jurisdiction. In turn, the answer to that question would determine the extent of immunity, if any, applicable to that conduct. Because the Court is unable to determine those issues on the basis of the record, they must be preserved for the trier of fact.

### (b) *Smith and Shaefer—qualified immunity*

Smith argues that, to the extent he acted in his capacity as Deputy Sheriff of Chester County, he is immune from liability because he was acting in good faith and within the scope of his duties. Smith's arguments regarding the extent of immunity applicable to law enforcement officers would be equally applicable to Shaefer in his capacity as Chief of Police of the Borough of Kennett Square and the Court will, therefore, include Shaefer in its discussion.

■ Law enforcement officials have never been granted an absolute and unqualified immunity but have been afforded the defense of good faith and probable cause for actions performed in their capacities as law enforcement officers. *Scheuer v.*

*Rhodes, supra,* 416 U.S. at 245–246, 94 S.Ct. 1683 (1974); *Hazo v. Geltz,* 537 F.2d 747, 751 (3d Cir. 1976). Moreover, to the extent a law enforcement officer acts pursuant to a direct order of a court, he may be entitled to quasi-judicial immunity, by which he would be absolutely immune for that conduct intimately related to the judicial process. *See, e. g., Lockhart v. Hoenstine,* 411 F.2d 455 (3d Cir.), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969); *Gigliotti v. Redevelopment Auth. of the City of New Castle,* 362 F.Supp. 764 (W.D.Pa.1973), *aff'd mem.,* 492 F.2d 1238 (3d Cir. 1974); *cf. Hazo v. Geltz, supra,* 537 F.2d at 749–750.

■ In her complaint, Coggins alleges that Smith acted at all times in his capacity as Deputy Sheriff of Chester County when he assisted in the execution of the writ and when he pursued, captured and arrested Coggins. Complaint ¶¶ 9, 24, 26–30. The complaint also alleges that Shaefer was acting at all times in his capacity as Chief of Police of Kennett Square when he took part in the apprehension and arrest of Coggins. Complaint, ¶¶ 10, 28–29. The extent to which the conduct of these two law enforcement officials is so intimately associated with the judicial process so as to cloak either or both defendants with quasi-judicial immunity or, if not so connected, the extent and application, if any, of a good faith defense, cannot be determined from the record before the Court and, accordingly, must be preserved for the trier of fact. *See Skehan v. Bd. of Trustees of Bloomsburg St. College, supra,* 538 F.2d at 61–62.

### C. *Fourteenth Amendment*

#### 1. *The County, Murray, McQueen and Smith*

■ In *Coggins I, supra,* Coggins named as defendants the County, Murray, McQueen and Smith and alleged claims based upon 42 U.S.C. §§ 1983, 1985, 1986 and state law. She did not allege a claim based upon the Fourteenth Amendment to the Constitution of the United States. The doctrine of res judicata, discussed in detail *supra,* applies " ' "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as

to any other admissible matter which might have been offered for that purpose".' . ." *Black Grievance Comm. v. Phil. Elec. Co.,* 79 F.R.D. 98, 104 (E.D.Pa.1978). One of the main purposes of the doctrine is to prevent " 'the splitting of a single cause of action and the use of several grounds under the same action as the basis for separate suits.' " *Ley v. Boron Oil Co., supra,* 454 F.Supp. at 450; *Denckla v. Maes, supra,* 313 F.Supp. at 523. Accordingly, while a litigant could have presented his theory of liability or ground for relief in the prior action in which a final, valid judgment was rendered on the merits, he is precluded by the doctrine of *res judicata* from instituting a second action based upon that theory of liability or ground of recovery or any other that could have been brought. At the time that Coggins filed her prior action, a claim based directly under the Fourteenth Amendment was available to her at least for purposes of establishing federal jurisdiction over the parties so that a federal court might entertain her pendent state law claims, *see, e. g., Gagliardi v. Flint, supra; Mahone v. Waddle,* 564 F.2d 1018 (3d Cir. 1977), *cert. denied,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978), and, accordingly, she is now barred by the doctrine of *res judicata* from stating a claim based directly under the Fourteenth Amendment against the County, Murray, McQueen and Smith.

### 2. *Carpenter*

■ As with claims based upon 42 U.S.C. § 1983, a requisite element of an action based upon the Fourteenth Amendment is state action or action taken "under color of state law." *Parks v. "Mr. Ford",* 556 F.2d 132, 135, n. 5 (3d Cir. 1977); *Hall v. Garson,* 430 F.2d 430, 439 (5th Cir. 1970). As with her claim against Carpenter pursuant to 42 U.S.C. § 1983, Coggins' failure to allege that Carpenter conspired with or acted in concert with the other defendants defeats, as a matter of law, her attempt to state a claim against Carpenter based directly under the Fourteenth Amendment to the Constitution of the United States, because she has failed to allege that Carpenter acted under color of state law.

### 3. *Lamb, Wollman, Conroy, Shaefer and Thomas Smith*

■ The issue of whether or not a claim can be based directly under the Fourteenth Amendment to the United States Constitution for purposes other than to establish an independent basis of federal jurisdiction over the parties has not yet been decided. *See Gagliardi v. Flint, supra; Mahone v. Waddle, supra; Coggins I, supra.* In keeping with the Supreme Court's decision in *Hagans v. Lavine,* 415 U.S. 528, 543–550, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), that cases should first be decided upon statutory rather than constitutional grounds and, in light of the fact that the Court has held that Coggins has stated a claim against Lamb, Wollman, Conroy, Shaefer and Thomas Smith pursuant to 42 U.S.C. § 1983, the Court will not decide at this time whether Coggins has also stated a claim against them based directly under the Fourteenth Amendment to the United States Constitution upon which relief can be granted.

This Memorandum Opinion is in support of this Court's Order dated March 19, 1979.